### UNITED STATES v. GORMLY.
### No. 8244.

Circuit Court of Appeals, Seventh Circuit.

June 9, 1943.

Rehearing Denied July 2, 1943.

228

Perry J. Stearns, of Milwaukee, Wis., for appellant.

B. J. Husting and E. J. Koelzer, both of Milwaukee, Wis., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

Defendant appeals from a sentence imposed upon a jury's verdict finding him guilty of a charge of failure to report, under the Selective Service Act, 50 U.S.C.A. Appendix, § 301 et seq., for transportation to a conscientious objectors' camp. The Local Draft Board's order was issued August 11, 1942, directing appellant to report on August 24, 1942. He refused to report.

Reversal of judgment is sought because: (1) The term for which the grand jury was impaneled had expired before the return of the instant indictment. (2) The "order" directing the defendant to report, on which the indictment was based, was signed simply by one "Davlin, Member of Local Board." (3) Internment in a conscientious objectors' camp constitutes involuntary servitude and prevents free exercise of religious beliefs, in violation of the Federal Constitution. (4) The trial below was unfair and the court prejudiced. (5) The indictment was vague, insufficient, and void. (6) The Selective Service Act is invalid. Other grounds are advanced, which we do not specifically state or discuss as they are clearly without merit.

Appellant was 28 years of age, a college graduate, mechanical engineer. He registered in Milwaukee, Wisconsin, under the Draft Law. He filled in and filed the special form for Conscientious Objectors, and was classified by his local board in class IV-E (Preferred and limited to Conscientious Objectors). He had worked as a taxi driver in Milwaukee, and at the time of trial was employed in a hospital laboratory, where his services were considered satisfactory.

In June, 1942, the Wisconsin Selective Service was notified by the Chief of Camp Operations Division, that defendant had been assigned to the conscientious objectors' camp at Merom, Indiana, and to report July 21, 1942. The letter ended:

"When he has reported, you will forward copies of the Form 50 for your files and for his original local board."

This letter was sent to the Local Board. The Local Board carried on some correspondence as to whether the appellant had been assigned to the proper camp due to a question arising out of a change in his

residence. On July 16, 1942, the National Director of Selective Service wrote to the State Director re application, stating:

" * * * (Appellant) who * * * has been classified in Class IV-E as being conscientiously opposed to both combatant and noncombatant military service *is hereby assigned* to work of national importance and *by order of said Local Board per D.S.S. Form 50* will be delivered to * * * (Merom, Indiana) on Aug. 24, 1942. State Headquarters will immediately submit one copy of this form to the Local Board * * *. Note that the time for reporting to the civilian camp is specified and this D. S. S. Form 49 must reach the Local Board so that D. S. S. *Form 50* can be mailed to the Registrant in time to allow 10 days' *notice* before reporting for transportation. Upon receipt of this notice, *the Local Board shall prepare six copies of Order to Report for Work of National Importance (D.S.S.Form 50)* * * *."

On August 7, the State Headquarters wrote the Local Board notifying them to send out *Form 50*.

The Order to Report, over the signature of but one of the Local Board's members, was sent to appellant. No question of its reception by defendant is raised.

When appellant did not report pursuant to Form 50, the Local Board sent him a follow-up notice, August 24, 1942, again directing him to report by mail, telegraph or in person, to the Local Board by the 29th of August, and stating that failure so to do is an offense punishable under the statute. This notice was also signed by one member of the Board.

Appellant never reported for transportation to the conscientious objectors' camp, although he communicated with the Local Board by phone and letter. He was apprehended by the police while distributing a conscientious objectors' magazine.

It is not necessary to discuss, at length, issues 1, 3, 4, 5, and 6. They have been sufficiently treated in the case of United States v. Mroz, 136 F.2d 221, decided by this Court, June 3, 1943.

The chief issue is the legal sufficiency of the August 11 order of the Local Draft Board to appellant to report for transportation to the conscientious objectors' camp, the violation of which notice is the basis of the instant indictment. Appellant contends the order was not the result of action by the *Board sitting en banc.* He also contends that an indictment if predicable at all, should have been based on the follow-up order which is not mentioned in the indictment, and which seemingly gave appellant a "second chance."

The indictment charged that on August 24, 1942, appellant was "a person charged with the duty of carrying out a direction given under the * * Act * * a direction or order issued by Local Board * * to report on the 24th day of August, 1942 for work of national importance * *."

The argument challenging the validity of the order to report because signed by a single member and with no evidence of Board action to support it, must be rejected.

Sec. 305, Title 50 U.S.C.A.Appendix concerns the procedure for determining the status of a conscientious objector. It provides that if a person be found to be a conscientious objector he shall be assigned to work of national importance under civilian direction. The statute requires all conscientious objectors to be listed by the local boards. The Regulations (652.1 and 652.2) concern the assignment of conscientious objectors to work of national importance and require the local board to notify immediately the Director of Selective Service on a particular form that the conscientious objector is available for assignment, such notice to be signed by "a *member* of the local board." Then the Regulations provide that the *Director* of Selective Service, upon receipt of such notice "shall assign the registrant to a camp" and the assignment shall be made on a specific form (No. 49) and forwarded to the draft board. Reg. 652.11 provides that the local board upon receipt of Form No. 49 "shall prepare * * * Order to Report for Work of National Importance (*Form 50*) * * *" and "proceed as follows: * * * mail the original * * * to the registrant." The Regulation goes on to provide:

"When an Order to Report for Work of National Importance (Form 50) is mailed or delivered to a registrant as hereinbefore provided, *it shall be his duty to comply* therewith, to report to the camp at the time and place designated therein, and to thereafter perform work of national importance under civilian direction for the period, at the place, and in the manner provided by law."

Reg. 603.59 covers the signing of the Draft Board's orders:

"Official papers issued by a local board may be signed by the clerk 'by direction of the local board' if he is authorized to do so by a resolution duly adopted by and entered in the minutes of such local board," provided that the chairman or *a member* of a local board must sign a particular paper *when specifically required to do so by the provisions of a regulation* * * *."

It thus appears that the Order to Report was not a discretionary order of the Local Draft Board requiring the meeting of the Board and a *determination* of the Board to issue it. It was a notification practically of statutory stature, being the prescribed form of notice designated by the Regulations to be issued upon *order* of the Director of Selective Service. When the Director so notifies the Board to act, *it must do so*. No meeting of the Board is necessary to pass upon the advisability of issuing the order to report, or of the terms of the order.

The Regulations above quoted provide that official papers may be signed by the "clerk" of the Board if he be authorized. We think the signature of a member of said Board is of the dignity and efficacy of that of the clerk. *As a matter of fact, the printed form No. 50, issued by the Selective Service administration, required by the Regulations to be sent the conscientious objector has the printed phrase "Member of Local Board" printed on the form furnished the Local Board for distribution.* Authority for the signature of a single member of the Board thus appears.

It is not the manner of notice that is important. The essential requirements are that a direction be given by the Director of Selective Service and that defendant be informed that an order assigning him to a camp has been made. Both of these requirements were conclusively shown to exist in this case. They were not questioned by defendant until his counsel asserted their necessity. Defendant knew of his classification and of his assignment. He was concerned over his association with others in the camp and the religious aid or instructions he might get. Others than members of his religion had a voice in the management of the camp. And he was worried also about the pay he was to receive while in the camp. And finally no doubt, he was possibly prompted by the belief that his conscientious objector's plea had secured for him avoidance of military duty, and stubborn reliance on this objection to a citizen's duty might obtain for him complete immunity from all such citizen's obligations.

While the foregoing reasons necessitated the court's rejection of defendant's contention that the order which defendant refused to comply with was not the order of the Board, the evidence affirmatively showed that it was the Board's order as a matter of fact. The Board voted the order *as a Board*.

Mrs. Krause testified orally and without objection as follows:

"I am acquainted with the defendant and have with me his file. He registered with Local Board No. 2 October 16, 1940. He filled out and turned in to the Board a questionnaire and answered both conscientious objection questions in the affirmative. He stated he was opposed to both combatant and noncombatant service. Such conscientious objectors are, under the law and regulations, placed in Class IV-E. The Board recognized his claim and placed him in IV-E LS classification August 27, 1941 (meaning limited service). On March 28, 1942 he was reclassified to IV-E as then limited service men were to be inducted. *An order was later issued by the Board, August 11, 1942,* ordering and directing him to report for work of national importance. The order specified that he was to report at 10:00 A. M. on August 24, 1942."

She further testified "referring to Government Exhibit No. 1, that order was made by the Local Board August 11th." "Mr. Davlin (who signed the order) * * * is secretary of the Board. The vote was taken at a meeting but we never mark who is present. A meeting was held on that day at the Local Board office. I was present but I don't recall who the Board members were who were present. There were three present. We issue orders to report according to Selective Service rules on regular orders."

Defendant testified:

"After receiving two notices to report to my Draft Board for assignment to a civilian public service camp, I again wrote them telling them that I would refuse service in any camp. I will not go to a camp, because in accepting conscription into such a camp I participate in one of the activities of the war machine, and thus become an accessory to murder on the battlefield."

He also said,

"I have been influenced by reading 'The Power of Non-Violence,' by Richard B. Gregg, and by reading 'War Without Violence,' by Krishmalal, Shridharani."

Various other contentions made by counsel for defendant have been considered and are all rejected. We refer to only one to illustrate how devoid of merit they are.

Complaint is made because the judge was prejudiced, and two bases for such charge are: (a) The judge spoke to the defendant after the jury had found him guilty, and said,

"I think your offense is a grievous offense. I think you are enjoying the benefits of one of the few free and independent governments that still are in existence in this world, and I think that because of your religious principles you probably feel that you do not care to take up arms to defend that government. With that conviction of yours I don't agree, but, nevertheless, I recognize that it may be an honest conviction of yours, and with that thought in mind I now give you one final opportunity, before sentence is imposed upon you, to accept the assignment which your Draft Board has given you, and to report tomorrow morning for induction in this camp of Civilian Service to which you have been assigned, rather than a sentence to the penitentiary."

and (b) the court *promptly* overruled defendant's objection to the indictment because returned by the grand jury after the term for which it was drawn, had expired.

■ With numerous court decisions holding squarely against the contention, a court is not required to take under advisement every motion made by ingenious counsel. Trials would be endless if the court had to listen to argument on each and every objection regardless of the debatability of the question. This question has been decided by this court in a recent case and numerous other decisions are there cited in support of the position taken by the court.

■ As to prejudice disclosed by the action of the court in talking to the defendant after the jury rendered its verdict, and asking him to reconsider his refusal to obey the order to appear, rather than go to the penitentiary, the court was displaying leniency and forbearance rather than prejudice or arbitrariness.

Unfortunately, defendant is not the only one of the group which is determined not to take up arms in their Country's defense. Much time is taken in an effort to make clear the issue which confronts the citizen who refuses to obey the command of his Government. Perhaps it is wasted time. But surely it indicates patience and a desire to help defendant, on Judge Campbell's part, rather than prejudice, bias, or harshness. The burden is a rather heavy one on the District Judges who are faced with the responsibility of enforcing the Selective Service Act. Surprising indeed is an attack coming from the accused that they are too lenient and too patient.

The judgment is affirmed.