UNITED STATES ex rel. ZUCKER v. OSBORNE, Director, Civilian Public Service Camp.

Civil Action No. 1559.

District Court, W. D. New York.

Jan. 20, 1944.

E. N. Mills, Jr., of Buffalo, N. Y., for petitioner.

George L. Grobe, U. S. Atty., by Eugene J. Donnelly, Asst. U. S. Atty., both of Buffalo, N. Y., for respondent.

KNIGHT, District Judge.

The petitioner registered in accordance with the Selective Training Act of 1940, 50 U.S.C.A.Appendix § 301 et seq., claimed exemption from combatant and noncombatant service, because he was conscientiously opposed to war in any form by religious training and belief, and he was classified as a conscientious objector. He was ordered to and did report to "Civilian Public Service Camp No. 46." He seeks discharge on the ground that Congress does not have the power to conscript individuals for non-military, non-defense purposes; that the Selective Training and Service Act is unconstitutional in that it delegates unlawful powers to the President; and that the rules and regulations promulgated by the Director of Selective Service exceed the powers delegated by the statute; and that exaction of forced labor without compensation as a price for religious freedom in war time is a violation of the First Amendment to the Constitution.

By express provision of the United States Constitution Congress has the power to "provide for the common Defence and general Welfare of the United States; * * * to declare War * * * [and] to raise and support Armies." Article I, Sec. 8, cls. 1, 11, 12. By virtue of this power the Selective Training and Service Act of 1940 was enacted. Among other things, it provided that such Act should not be construed to require a person to be subject to combatant training and service who, "by reason of religious training and belief, is conscientiously opposed to participation in war in any form" 50 U.S.C.A.Appendix § 305(g), but that claiming such exemption he should be inducted and assigned to noncombatant service. It further provided that if one were found to be conscientiously opposed to participation in noncombatant

986

service, he should "be assigned to work of national importance under civilian direction."

■ We are not concerned with the power to conscript individuals in time of peace. We are concerned with that power in time of war. The conclusion, it seems to this Court, based both upon reason and authority, is inescapable that Congress has full power to conscript individuals for work of national importance under civilian direction in time of war.

The statute authorizes the President to prescribe necessary rules and regulations to carry out the provisions of the Selective Training and Service Act. Section 10. The Director of Selective Service has been authorized by the President to designate or establish work of national importance. Executive Order No. 8675, Six Federal Regulations, 831, 832. Under the regulation of the Selective Training and Service Act the petitioner has been assigned to a camp in order to report for "work of national importance."

■ By virtue of the Selective Training and Service Act of 1940, Congress has provided for the draft of manpower in time of war for two separate and different purposes—one in the armed forces for combatant and noncombatant service; one for national importance of non-military character. Both are essential to the war effort. Work of national importance in time of war means work of value to the nation for the common defense and the general welfare. It is imperative that work that measures up to national importance be carried on. A clear distinction can be drawn between "work of national importance" and work which can not be so classified. Opinions of the courts, almost without number, support the constitutionality of the Selective Training and Service Act in the respects in which it is challenged. Some of these opinions are directly in point upon the questions raised here; others contain many specific declarations unquestionably supporting the conclusion herein.

■■ "The term 'involuntary servitude' (as used in the 13th Amendment) was intended to cover those forms of compulsory labor akin to African slavery which in practical operation, would tend to produce" slavery. This case had under consideration "involuntary servitude" in time of peace, but in this time of war compulsory labor required is not "akin to African slavery." Butler v. Perry, 240 U.S. 328, 332, 36 S.Ct. 258, 259, 60 L.Ed. 672.

"From its very nature the war power, when necessity calls for its exercise, tolerates no qualifications or limitations, unless found in the Constitution or in applicable principles of international law. In the words of John Quincy Adams, 'This power is tremendous; it is strictly constitutional; but it breaks down every barrier so anxiously erected for the protection of liberty, property and of life.' To the end that war may not result in defeat, freedom of speech may, by act of Congress, be curtailed * * *; freedom of the press curtailed * * *; deserters and spies put to death without indictment or trial by jury; * * * and other drastic powers, wholly inadmissible in time of peace, exercised to meet the emergencies of war. * * * The conscientious objector is relieved from the obligation to bear arms in obedience to no constitutional provision, express or implied; but because, and only because, it has accorded with the policy of Congress thus to relieve him. * * *" United States v. Macintosh, 283 U.S. 605, 622, 51 S.Ct. 570, 574, 75 L.Ed. 1302.

"It may not be doubted that the very conception of a just government and its duty to the citizen includes the reciprocal obligation of the citizen to render military service in case of need and the right to compel it." Selective Draft Law Cases (Arver v. United States), 245 U.S. 366, 378, 38 S.Ct. 159, 161, 62 L.Ed. 349, L.R.A. 1918C, 361, Ann.Cas.1918B, 856.

"Men drafted into military or naval service of the United States are not held either in slavery or in a state of involuntary servitude within any construction which can properly be placed on the Thirteenth Amendment." Angelus v. Sullivan, 2 Cir., 246 F. 54, 60. See, also, United States ex rel. Pfefer v. Bell, D.C., 248 F. 992; Seele v. United States, 8 Cir., 133 F.2d 1015.

In Falbo v. United States, 64 S.Ct. 346, 347, decided in the Supreme Court January 3, 1944, in considering whether a judicial review of a Board's classification of a conscientious objector in a criminal prosecution for violation of an order to report for assignment to work of national importance was authorized, the court said, in referring to the Selective Training and Service Act of 1940: "The Congress was faced with the urgent necessity of integrating all the nation's people and forces for national defense. That dire conse-

quences might flow from apathy and delay was well understood. Accordingly the Act was passed to mobilize national manpower with the speed which that necessity and understanding required."

The recent proposal of the President of the United States to draft the entire manpower of the nation within certain limits as to age is in effect an extension of the present manpower draft law. Congress is authorized by the Constitution "To make all Laws which shall be necessary and proper for carrying into Execution" (the powers in question). Article I, Sec. 8, cl. 18.

Having power to draft men for military service, it must follow that Congress has the power to draft men for work in aid of military service and that is what work of national importance in time of war is. Congress could not well specify particulars as to the work to be done, and it was within its authority to leave such specification to the administrative body. Petitioner has been granted the classification he sought. He was assigned to conservation work. Well may it be said that is in aid of military service for it releases other men for combatant and noncombatant service. The statute lays down a complete plan for induction into work of national importance under civilian direction. It is well within the power of Congress to compel petitioner to work, to fix hours, to limit his freedom, subject him to disciplinary control, to disallow compensation and to hold him under camp surveyance. He has not been denied free exercise of his religion. None of the numerous cases cited by the petitioner was concerned with the question of the authority of Congress to conscript men for work of national importance in time of war and none has any remote application here.

The specific questions now presented were decided in the recent case of Hopper v. United States, 9 Cir., 142 F.2d 181, opinion dated Dec. 6, 1943. There Hopper had been classified in IV-E and was charged with failure to report for work of national importance under civilian direction. Claim was made that the provisions under the Selective Training and Service Act for work were unconstitutional. The court, in part, said: "These propositions (that the Act was unconstitutional), in one guise or another, have been advanced again and again, both in this and in the first World War, and have uniformly met with rejection. (citing cases) Congress and the selective service authorities alike have been considerate in their treatment of those possessing scruples against participation in war. Surely it is not expecting too much to require of them that they do civilian work of national importance at a time when their brothers, under the same compulsion, are giving their lives for them and for the Nation. * * * appellant was accorded due process of law. The board did not act arbitrarily, either in classifying him or in directing him to report for service in line with his classification."

United States v. Mroz, 7 Cir., 136 F.2d 221, arose on a conviction for failure to report for transportation for work of national importance as a conscientious objector. ' Questions presented were whether the indictment was void because based on unlawful delegation of power by Congress; that the act was void and that the assignment of defendant to Civilian Public Service Camp was "in effect attainder of treason." The indictment was sustained, the court, in part, saying: "A mere listing of appellant's grounds for reversal suggests triviality of merits." 136 F.2d 224. "Appellant dwells on lack of a due process hearing, and on arbitrary and capricious action. He seemingly fails to realize that war is realistic, that the emergency requires immediate mobilization of a large manpower; * * *. It is hard to conceive of any government at war dealing more considerately with its citizens who express conscientious objections to war, * * *." 136 F.2d 227.

United States v. Gormly, 7 Cir., 136 F.2d 227, 228, certiorari denied October 11, 1943, 64 S.Ct. 60; involved a charge the same as in United States v. Mroz, supra. Appeal was based upon the grounds, among others, that "Internment in a conscientious objectors' camp constitutes involuntary servitude and prevents free exercise of religious beliefs, in violation of the Federal Constitution," and further that "The Selective Service Act is invalid." Conviction was affirmed in reliance upon the decision in United States v. Mroz, supra.

The point is made that an unconstitutional condition can not be imposed as the price of a privilege. Of course this must be true, but we have no unconstitutional condition here.

The point is urged that the Selective Training and Service Act is "so incomplete as to represent an unlawful delegation of

legislative power, because the Act itself does not give a definition of 'work of national importance'." Authorized to prescribe the regulations for the carrying out of the Act, the President issued the aforesaid Executive Order giving authority to the Director to designate the work of national importance. That the Director has done. Assuming there are some kinds of work not of national importance, even in time of war, work in the conservation service is of national importance.

It is urged that the Act violates the Fifth Amendment in that it exacts forced labor without compensation. Petitioner here is not "deprived of life, liberty, or property, without due process of law" nor is his "private property" taken. If Congress can conscript for combatant military service, without compensation, and it can (Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643, 3 Ann.Cas. 765), it can conscript for work of national importance without compensation.

Counsel for the petitioner depicts the condition of the groups of conscientious objectors in the various camps as bordering on the lowest type of slavery. Even be it so, it is not to be compared with the condition at time of the men on the battle fronts, coupled as it is with the immediate danger of loss of limb or life. The conscientious objector may well be pleased that he is secure from the danger of war, if he can satisfy his own sense of loyalty in his attitude.