**UNITED STATES ex rel. GOODMAN v. HEARN, Commanding General.**

No. 11456.

Circuit Court of Appeals, Fifth Circuit.

Jan. 15, 1946.

Charles M. Cork, of Macon, Ga., and Meyer Kreeger, of New York City, for appellant.

Reid B. Barnes, Major, J. A. G. D., and Myron T. Nailling, Major, J. A. G. D., both of Atlanta, Ga., and John P. Cowart, U. S. Atty., of Macon, Ga., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

David Goodman brought habeas corpus proceedings to deliver his minor son, Eugene Goodman, from detention in an army camp, alleging that the induction of his son was unlawful because he was a bona fide student in a recognized theological school, preparing himself to be a minister of the Jewish religion, to-wit, a rabbi; and that the Local Board in denying his exemption as such acted in an unfair and illegal manner, and was arbitrary and capricious. On the hearing the evidence consisted of the testimony of the son and the file of the Local Board concerning him. The Court found that Eugene Goodman was classified 1-A by the Local Board on July 25, 1944, and thereafter was again so classified (he having requested and been accorded a hearing before the Board) on January 30, 1945; that he appealed to the Board of Appeals, which by a unanimous vote on Feb. 28, 1945, classified him 1-A; that all said classifications were proper and that neither the Local Board nor Appeal Board acted in an arbitrary, capricious or illegal manner and neither of them exceeded its jurisdiction or power. The writ was accordingly discharged and this appeal followed.

The principal questions argued here are as to the authority of the court to review the action of the Boards; whether the evidence before them was so clear and convincing as to make their action denying the claimed exemption from military service necessarily arbitrary and a denial of due process of law; and whether the reference by the Local Board of the question to an "Advisory Panel on Theological Classifications" which was set up by the New York City Selective Service Headquarters vitiated and nullified the result.

■ 1. The Constitution, Article 1, Sect. 8, Cl. 12, vests in the Congress the power to raise and support armies. The power is plenary. In re Tarble, 13 Wall. 397, 408, 20 L.Ed. 597. Minors may be enlisted, Tarble's case, supra; and without the consent of their parents. United States v. Bainbridge, 24 Fed.Cas. page 946, No. 14,-497. The present Selective Service Act, as amended, Sections 2, 3, 50 U.S.C.A.Appendix, §§ 302, 303, requires every male citizen, and resident, between the ages of eighteen and sixty-five, to register for service, and makes them all liable to training and service unless deferred or exempted. Section 5(d), 50 U.S.C.A.Appendix, § 305(d), provides: "Regular or duly ordained ministers of religion, and students who are preparing for the ministry in theological or divinity schools recognized as such for more than one year prior to the date of enactment of this Act, shall be exempt from training and service (but not from registration) under this Act." The regular minister or theological student has no inherent or constitutional right to exemption from service. The exemption is given by Congress, and is subject to the qualifications that Congress may annex to it. All are required to register. The Congress has required the President to set up the Local Boards as its representatives and assistants in raising the army, and as to them has enacted: "Such local boards, under rules and regulations prescribed by the President, shall have power within their respective jurisdictions to hear and *determine,* subject to the right of appeal to the appeal boards herein authorized, *all questions or claims* with respect to inclusion for, or *exemptions* or deferment from, training and service under this Act of *all individuals* within the jurisdiction of such local boards. The *decisions* of such local board shall be *final* except where appeal is authorized * * *. The decision of such appeal boards *shall be final* in cases before them on an appeal unless modified or changed by the President as provided in the last sentence of Section 5 *(l)* of this Act" (Emphasis added.) 50 U.S.C.A.Appendix, § 310(a) (2) We regard it as clear that Congress has willed it that all questions of classification for, and deferment or exemption from service, are committed to the machinery so defined, without interference or review by the courts; and that the Constitution permits Congress to raise an army in this way. This we understand to be the effect of the decision in Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.

But the habeas corpus statutes have not been repealed or suspended. It is still, as it has always been, the right of one who, after he has been against his will inducted into the army and there put under restraint of his liberty, to question the lawfulness of his restraint by a writ of habeas corpus in the civil courts. This father can so question the detention of his minor son. If the son were sixteen years old instead of nineteen, and so not within the military age defined by Congress, we do not say the father could not succeed. Cf. Tarble's case, supra. But here it is only a question of exemption, depending on a question of fact, which has been passed on by the Local Board having jurisdiction over this registrant, after hearing the father and son and the rabbi who was tutoring the son; and has been passed on by the Appeal Board, whose unanimous decision was refused review by the President. These decisions are, as the statute says, final. The question of exemption from military service is not a matter belonging to the judicial power of the United States which the Constitution vests in the courts, but it is a part of the procedure of raising an army, which is vested in Congress and its instrumentalities.

2. But we are not saying that an exemption given by Congress is not a legal right, or that the boards created by Congress can disregard it, or refuse to hear the claim to it, or deny due process in the hearing. Any tribunal which passes on a right must give a fair hearing and an honest decision. But in this case there was not only a full, but a patient and repeated hearing. Nor do we think the honesty of the hearing tribunals can be doubted. The Local Board, dealing with a matter of Jewish practice on which they did not wish to risk their unaided judgment, asked advice of the Theological Panel, not once but twice. They then classified 1-A, before and after hearing orally the father, the registrant, and a rabbi friend. The Appeal Board unanimously did the like. They did not believe that the registrant was a full time student in good faith preparing for the Jewish rabbinate, though the school he was attending was concededly such a theological school as the statute above quoted describes. It appears that the school has theological and rabbinical courses and also courses of a more general nature; and that religious Jews often take courses there of the theological kind without intending to become

rabbis; that this boy attended for over two years taking only general courses. On Nov. 13, 1942, the law was amended to include for military service boys of eighteen, he then being seventeen. In February following he entered the rabbinical department of the school, and on becoming eighteen the following fall he registered and answered his questionnaire in December, 1943. There was some disagreement between the testimony of the registrant and his father and friend as to when he decided to become a rabbi. Three of his teachers signed a statement that they considered him a sincere rabbinical student. But two members of the faculty were on the Theological Panels which recommended a 1-A classification. The burden was on the registrant to establish before the Board his exemption, as it was on his father in the court below to show a want of due process in its denial. The Board could honestly have concluded the exemption was not satisfactorily established. We agree with the district judge that the classification made ought not to be nullified by the courts.

3. Appellant rests heavily on United States ex rel. Levy v. Cain, 149 F.2d 338, in the Second Circuit, followed in the Third Circuit in United States ex rel. Samuels v. Pearson, and United States ex rel. Horowitz v. Pearson, 151 F.2d 801, in which on habeas corpus the use by the local boards of the Theological Panel above mentioned was held to vitiate the classifications made. We do not agree with all that was said in these opinions. This Theological Panel, not authorized by statute or regulation, seems to have been set up by Selective Service Headquarters for New York City, to give the local boards of the vicinity information and advice on the matter of these ministerial exemptions, there being many kinds of religions and ministers and students in that crowded population with which members of the local boards might not be familiar. We can see that such advice from well-informed members of the faiths in question might both help and speed just classification; and such was, we think, its purpose in this case. On receiving this questionnaire in which an exemption was claimed as a rabbinical student, the Local Board sent the file to Headquarters for New York City for advice, and it was referred to a panel which this record shows was composed of a rabbi personally known to registrant and

a member of the faculty of his school, and a Jewish city judge, also known to registrant, and another city judge, Judge Evans, described as a member of B'nai-Brith, and connected with Jewish charitable organizations. The registrant appeared before this panel and made his statement. The panel advised that the courses of study taken were not a safe guide to the intentions of the students, rabbinical courses being often taken by those intending ultimately other careers, and that for Selective Service classification the intention of each individual should be sought. The panel also said that from their examination of the registrant and his demeanor they were of opinion that he was not a serious student preparing in good faith for the rabbinate. This report, with the statement which registrant made to the Panel, was put in the file, but the names of the members of the panel were not attached, though registrant testifies he personally knew two of them when he appeared before them. Anyone could have told him who the other man was. The Board classified 1-A. The registrant, as was his right, asked for a hearing before the Board, and he and his father and his rabbi tutor were heard and some written statements were received. The Local Board then sent the file again to Selective Service Headquarters with request that the case be resubmitted to the Advisory Panel, because registrant in the hearing took the position that the Panel's former recommendation was the result of an error; saying: "The members of this Board therefore consider it advisable to resubmit the file to you for review and recommendation. The fact that further consideration is requested should not be construed as meaning that we disagree with the Panel's findings. It is our intention rather that the registrant be given every opportunity to substantiate his claim before those persons best qualified to pass upon them." A panel composed of Judge Evans, (of the former panel), Rabbi Landman, Rabbi Lookstein, and Rabbi Max then heard registrant at length. He admits he knew Rabbi Max and Rabbi Lookstein. This panel sent in a transcript of registrant's lengthy statement, and its opinion, laying stress on the importance, in testing the sincerity of registrant's purpose, "of his demeanor, his manner of answering questions, and the total impression accruing with respect to his candor, trustworthiness, and integrity." The final opinion was ex-

pressed that he was not preparing in good faith for the rabbinate. These papers went into the file.

Headquarters, in returning this report to the Board, wrote, as it had written before, "Of course, while the Local Board should give careful consideration to the recommendation of the advisory panel, the responsibility of determining registrant's classification must rest with the Local Board itself, or the appropriate agency of appeal." The Board again classified 1-A. An appeal was taken, resulting in a unanimous decision of 1-A by the Appeal Board.

It is not according to general court practice to take and consider opinions of outsiders on the question at issue, and there is danger that too much weight may be given to them. But even in courts the practice is not unknown. In the Roman courts there were "assessors", who sat with the judge at his request to advise him. Lord Mansfield, who engrafted the law merchant (being the customs of merchants) into the English law, is reported to have had a committee of merchants with whom he would consult. A Chancellor of course may have a Master to advise him both on the law and the facts of an equity case. We do not think that a Local Board necessarily abdicates its function or vitiates its decisions on deferments and exemptions by seeking opinions which it regards as reliable. It must, of course, as this Local Board was advised, make the final decision, and fairness and the regulations require that such outside information be put in writing in the file where the registrant may see and explain or deny it. That was all done in this case. The names of the panel members were not in the file, but in each instance two were known to registrant and all could have been learned easily. The Board wrote registrant that it had made its own classification on the hearing before it. There is no good ground for saying it left the decision to the panel. The minute of the Board's hearing before the second reference to Headquarters concludes: "Board desires that the Advisory Panel review this case and that if any reversal is in order the Advisory Panel make the decision." This is urged as showing abdication of its function, but it seems to us to indicate that the Board, as a result of the hearing, was not inclined to change the classification, unless the Advisory Panel decided it ought; and this was more fully stated in the Board's letter

the next day (quoted above) when the file went back to Headquarters. The Advisory Panel did not change its advice. Headquarters warned the Board to make its own decision, and the Board wrote registrant that it had classified him on the hearing before itself. We do not think the classification void. It has since been considered by the Appeal Board, along with a lengthy statement made by or for registrant in which all the contentions now made were urged, and the Appeal Board classified 1-A. Its decision not merely confirms, but rather supersedes that of the Local Board. The Appeal Board is not shown to have abdicated its functions to any panel.

Judgment affirmed.