**UNITED STATES of America**

v.

**Frank Richard BARTELL, formerly known as "Frank R. Inguagito,"**
**Defendant.**

United States District Court
S. D. New York.

Oct. 9, 1956.

Paul W. Williams, U. S. Atty., for the Southern Dist. of N. Y., New York City, for United States John T. Moran, Jr., Asst. U. S. Atty., New York City, of counsel.

Abraham Solomon, New York City, for defendant.

LEVET, District Judge.

The defendant, Frank Richard Bartell, is charged with having failed and refused to obey an order of his local draft board, pursuant to Sections 456(j) and 462, Title 50 U.S.C.A.Appendix, to report for civilian work contributing to the maintenance of the national health, safety and interest in lieu of induction into the Armed Forces. With the approval of this Court, the government has consented to defendant's written waiver of a jury trial in accordance with Rule 23(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

Although defendant has not requested special findings of fact, and, therefore, none are required pursuant to Rule 23 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., this Court will note certain salient facts in addition to the general finding in order to advise the defendant of the basis for such finding.

On December 5, 1949, the defendant registered with Local Board No. 75, Rochester, New York. Thereafter, he communicated with said draft board by letter dated March 5, 1951, in which he requested that he be deferred as a student preparing for the ministry. In this letter he stated:

"The fact that I already serve in an army to the Almighty Jehovah God and have confessed to the fact that I am a student of this great force of preachers of the word, service to any other power would brand me a traitor to him and place me in a line of death. Because I do desire to serve Jehovah God and no other, my support to any wordly force is impossible."

The Classification Questionnaire (SSS Form 100: Ex. 1A) which the defendant answered and signed on March 18, 1951, contains a statement by him that he was a student preparing for the ministry under the direction of the Watch Tower Bible and Tract Society, Inc., and that he was attending the Kingdom Hall Theocratic Ministry Course at Rochester, New York. Defendant also stated in said questionnaire that he was employed by the Mohican Food Markets in Rochester, where he worked on an average of forty-five hours per week. Defendant indicated that he was conscientiously opposed to war and requested a IV-D classification.

The local board classified the defendant IV-E as a conscientious objector and mailed to the defendant a special form for conscientious objectors (SSS Form

150: Ex. 1C). In answer to the questions contained in said form, the defendant said that he was a member of the Watch Tower Bible and Tract Society and that both his parents are members of this sect and that he had been reared as a Jehovah Witness since birth. The defendant was thereafter twice classified I–A and subsequently reclassified I–O.

On December 22, 1952, the defendant was notified to report to the New York State Employment Service for processing as a conscientious objector. The defendant declined to accept the work prescribed under the Selective Service Regulations on the ground that he expected to report at Owego, New York, for training in the Seminary of Jehovah's Witnesses. After investigation by the Department of Justice, it was recommended by said Department that the defendant be classified I–O.

A special questionnaire (Ex. 1N) was answered by the defendant in April, 1954, in which he stated that he was regularly employed as a receiving clerk in a retail store in Pennsylvania. His answers also indicated that he devoted forty hours per week to said employment and that he preached and taught the principles of religion "On the average of 12–15 hrs. per month."

The defendant was twice found physically acceptable for service in the Armed Forces. On July 8, 1954, a Special Report for Class I–O Registrants (SSS Form 152) was mailed to the defendant, which he completed and returned with a note requesting a list of approved civilian work. A list of the agencies approved in Pennsylvania for the assignment of I–O registrants for civilian work in lieu of induction was mailed to the defendant on July 26, 1954.

The defendant did not obtain approved civilian work in Pennsylvania, and on February 24, 1955, the New York State Headquarters gave him until March 15th to advise the local board as to the results of his job applications. The defendant did not advise the board as requested, and on March 30, 1955, Local Board No. 75 offered him three types of work in Wassaic, New York. Defendant thereafter informed the board that he had returned to Rochester and requested work in Rochester. The defendant was again furnished with a list of approved civilian agencies, but he did not obtain employment as required.

At a meeting with a representative of the State Director of Selective Service, the defendant stated that he would refuse any and all civilian work in lieu of induction into the Armed Forces. (See Ex. 1–JJ)

On January 12, 1956, the local board ordered the defendant to report for civilian work on February 1, 1956 (SSS Form 153). He reported to Local Board No. 75 on said date and was given instructions to proceed to his place of employment, namely, the Wassaic State School, Wassaic, New York. He was also informed that a failure to report as ordered would constitute a violation of the Universal Military Training and Service Act, as amended, which is punishable by fine or imprisonment, or both. The defendant failed to report as ordered by his local board, and this fact he conceded at the trial.

Although defendant now resides at Rochester, New York, the venue for the alleged violation of the order to perform civilian work at the Wassaic State School lies in this district since said school is located in the Southern District of New York. "Where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime." Johnston v. United States, 1956, 351 U.S. 215, 220, 76 S.Ct. 739, 742.

The defendant contends that he is a minister of religion of the Jehovah Witness sect and, therefore, entitled to a IV–D classification. He relies upon the fact that said sect considers all of their members as ministers of religion. It appears from the record that the defendant is a sincere and religious individual who conscientiously objects to both combatant and non-combatant military service by reason of his religious training and belief. Nevertheless, his

right to act pursuant to his belief is not absolute and may be limited by legislation necessary for national security. Thus, in Gara v. United States, 6 Cir., 1949, 178 F.2d 38, affirmed, 1950, 340 U.S. 857, 71 S.Ct. 87, 95 L.Ed. 628, in a case involving the Selective Service Act, Allen, Circuit Judge, re-enunciated the basic legal principle applicable here, to wit:

"The fact that appellant sincerely believed that it was his Christian duty to oppose registration does not absolve him from his violation of the statute. The rights of religion are not beyond limitation. Davis v. Beason, 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637; Prince v. [Commonwealth of] Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645. The guaranty of freedom of religion in the Bill of Rights is not a guaranty of immunity for violation of law. Baxley v. United States, 4 Cir., 134 F.2d 937; Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244." 178 F.2d at page 40.

As further stated by Swaim, Circuit Judge, in Mitchell v. Pilgrim Holiness Church Corp., 7 Cir., 1954, 210 F.2d 879, certiorari denied 347 U.S. 1013, 74 S.Ct. 867, 98 L.Ed. 1136:

"While the First Amendment to the Constitution does guarantee the free exercise of religion, the right so guaranteed is not without limitations. The individual has the absolute power to believe in any religious doctrine he may choose but only limited power to act pursuant to that belief." 210 F.2d at page 884.

■ Congress has power to raise armies, to determine who shall serve in such armies, and who shall be exempt, in time of peace and in time of war. Such powers are essential to national security. See United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; United States v. Henderson, 7 Cir., 1950, 180 F.2d 711, certiorari denied, 1950, 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372; Richter v. United States, 9 Cir., 1950, 181 F.2d 591, certiorari denied, 1950, 340 U.S. 892, 71 S.Ct. 199, 95 L.Ed. 647; Warren v. United States, 10 Cir., 1949, 177 F.2d 596, certiorari denied, 1950, 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584. In the Warren case, Phillips, Chief Judge, wrote:

"The constitutional power of Congress to raise armies necessarily connotes the like power to say who shall serve in them and in what way.

"Under the war power, Congress may provide for conscription into combatant military service those who are conscientiously opposed to participation in war. Who shall be exempt from service in the armed forces is dependent upon the will of Congress and not upon the religious scruples of the individual, except as Congress may provide.

"Congress has power to raise armies by conscription in time of peace as well as in time of war. The power to do so is essential to the national security. * * *

"Freedom of religion and freedom of speech, guaranteed by the First Amendment, with respect to acts and utterances calculated to interfere with the power of Congress to provide for the common defense and to insure the survival of the nation are qualified freedoms. They may not be construed so as to prevent legislation necessary for national security, indeed, that may be necessary to our survival as a nation." 177 F.2d at pages 598–599.

■ Since the Congress has the right to determine who shall serve and who shall be exempt, it has the power to define the categories of those who may be thus exempted. Rase v. United States, 6 Cir., 1942, 129 F.2d 204. The exemption of ministers from selective service of any nature is simply a right created by the statute, which must be asserted and vindicated.

"* * * the guarantee of the First Amendment of free exercise of religion, which appellant invokes, does not allow him or any other

citizen to make his own rules or select his own methods for the vindication of any rights to which he may be entitled under the Selective Training and Service Act or as a matter of religious freedom in general. It is only a guarantee that the law will protect his free exercise of religion through adequate, orderly and reasonable machinery and processes. No citizen who refuses to recognize and resort to such machinery and processes as the law has appropriately prescribed for that purpose can or will be heard to complain that his religious freedom has not been respected. Such a recognition of and submission to reasonable machinery and process are of the essence of the functioning of a democratic form of government and of its power to vindicate personal rights. That lesson no American citizen may refuse to learn." Johnsen, Circuit Judge, in Van Bibber v. United States, 8 Cir., 1945, 151 F.2d 444, 446–447.

■ Congress, notwithstanding the fact that the defendant was a conscientious objector, had the power to compel him to serve in useful civilian work in lieu of active military service. Roodenko v. United States, 10 Cir., 1944, 147 F.2d 752, certiorari denied, 1944, 324 U.S. 860, 65 S.Ct. 867, 89 L.Ed. 1418; United States ex rel. Zucker v. Osborne, D.C.W. D.N.Y., 1944, 54 F.Supp. 984, affirmed, 2 Cir., 1945, 147 F.2d 135, certiorari denied, 1944, 325 U.S. 881, 65 S.Ct. 1574, 89 L.Ed. 1997; Brooks v. United States, 2 Cir., 1945, 147 F.2d 134, certiorari denied, 1944, 324 U.S. 878, 65 S.Ct. 1027, 89 L.Ed. 1430.

Congress has expressly limited the scope of judicial review of the decisions of the local boards by providing that "The decisions of such local boards [are] final, except when an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe." 50 U.S.C.A.Appendix, § 460(b) (3). The Supreme Court in Estep v. United States, 1946, 327 U.S.

114, 66 S.Ct. 423, 90 L.Ed. 567, has interpreted a similar provision of the Selective Training and Service Act of 1940 to mean that "Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." 327 U.S. at pages 122–123, 66 S.Ct. at page 427.

This principle was reiterated by the Supreme Court in Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132, where the Court stated that the decisive issue was whether there was a basis in fact for denying a claim to a ministerial exemption under the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq. The Court said:

"* * * The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities." 346 U.S. at page 396, 74 S.Ct. at page 157.

■ The main question, therefore, is whether there was a basis in fact for the I–O classification which the defendant was given.

■■ It does not follow that because all members of a sect are regarded by such sect as ministers that they are all entitled to the ministerial exemption. This point was expressly stated by the Supreme Court in the Dickinson case. supra, as follows:

"The ministerial exemption, as was pointed out in the Senate Report accompanying the 1948 Act, 'is a narrow one, intended for the lead-

ers of the various religious faiths and not for the members generally.' S.Rep.No. 1268, 80th Cong., 2d Sess. 13. Certainly all members of a religious organization or sect are not entitled to the exemption by reason of their membership, even though in their belief each is a minister. Cf. Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59. On the other hand, a legitimate minister cannot be, for the purposes of the Act, unfrocked simply because all the members of his sect base an exemption claim on the dogma of its faith. That would leave a congregation without a cleric. Each registrant must satisfy the Act's rigid criteria for the exemption. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under § 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrant's 'vocation.' And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption." 346 U.S. at pages 394–395, 74 S.Ct. at page 156. Whether the defendant is entitled to a ministerial exemption depends upon his individual case and not upon what he professes.

■■■ The definition of the term "minister of religion" within the meaning of the Universal Military Training and Service Act can be found in the Selective Service Regulations, 32 Code of Federal Regulations 1622.43.[1] There was evidence before the local board that the defendant worked approximately forty-five hours a week as a grocery clerk when he signed the Classification Questionnaire (SSS Form 100: Ex. 1A) on March 18, 1951. The special questionnaire (Ex. 1N), which the defendant answered in

1. "§ 1622.43. *Class IV–D: Minister of religion or divinity student.* (a) In Class IV–D shall be placed any registrant:
"(1) Who is a regular minister of religion;
"(2) Who is a duly ordained minister of religion;
"(3) Who is a student preparing for the ministry under the direction of a recognized church or religious organization and who is satisfactorily pursuing a full-time course of instruction in a recognized theological or divinity school; or
"(4) Who is a student preparing for the ministry under the direction of a recognized church or religious organization and who is satisfactorily pursuing a full-time course of instruction leading to entrance into a recognized theological or divinity school in which he has been pre-enrolled.
"(b) Section 16 of title I of the Universal Military Training and Service Act, as amended [50 U.S.C.A.Appendix, § 466], contains in part the following provisions:
"Sec. 16. When used in this title—
* * * (g) (1) the term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.
"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.
"(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

April, 1954, reflected the fact that he worked forty hours a week as a clerk in a retail store, whereas he devoted twelve to fifteen hours a month to his religious activities. In view of these facts, the local board could fairly and reasonably have found that the defendant was not a person "who as his regular and customary vocation preaches and teaches the principles of religion" as distinguished from one "who irregularly or incidentally preaches and teaches the principles of religion." See United States v. Hoepker, D.C.1954, 126 F.Supp. 118, affirmed, 7 Cir., 1955, 223 F.2d 921, certiorari denied, 1955, 350 U.S. 841, 76 S.Ct. 81; Leitner v. United States, 4 Cir., 1955, 222 F.2d 363; Rase v. United States, 6 Cir., 1942, 129 F.2d 204; United States v. Schuemann, D.C.1954, 119 F.Supp. 640; United States v. Wider, D.C.1954, 119 F.Supp. 676.

In view of the foregoing, it is concluded that there is a factual basis for the classification made by the selective service authorities. Accordingly, the defendant, Frank Richard Bartell, is found guilty as charged in the indictment.