216 F.Supp. 516 (1963)
UNITED STATES of America,
v.
Daniel Andrew SEEGER, Defendant.
No. 62 Cr. 1003.
United States District Court S. D. New York.
April 24, 1963.
*517 Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for the United States; Ezra H. Friedman, Asst. U. S. Atty., of counsel.
Davies, Hardy & Schenck, New York City, for defendant; Kenneth W. Greenawalt, Thomas T. Adams, New York City, of counsel.
LEVET, District Judge.
On November 13, 1962, the defendant was indicted for unlawfully and knowingly failing "to submit to induction at the time and place fixed in an Order to Report for Induction mailed to him by his Selective Service System Local Board." 50 U.S.C.Appendix § 462; 32 C.F.R. § 1632.14.
Defendant pleaded "not guilty" on November 20, 1962. A trial was conducted on March 26, 1963, at which time defendant waived a trial by jury. At the close of the trial decision was reserved.
It is undisputed that defendant's Selective Service File (Exs. 1-60) accurately discloses the following:
Defendant registered with Local Board 66 upon his eighteenth birthday on September 4, 1953. On October 21, 1953 he filed his Classification Questionnaire (S. S.S. Form 100) (Ex. 3). It reflected that he was unmarried and was a chemical engineering student at Cooper Union School of Engineering. He did not execute the claim for conscientious objector exemption which appears on page 7 of the Questionnaire. He stated that he thought he was entitled to deferment as a student.
The Minutes of Board Action (p. 8 of Questionnaire) reflect that he was initially classified 1-A on October 27, 1953 and that he was reclassified 2-S as a student on July 26, 1955. He remained in that classification until August 26, 1958, when he was reclassified 1-A.
On July 15, 1957 defendant wrote to the Board that he was conscientiously opposed to participation in war. He was mailed a Special Form for Conscientious Objectors (S.S.S. Form 150) (Ex. 11) which he filed with supporting documents on July 29, 1957.
On the Special Form for Conscientious Objectors the defendant executed the Series I claim for exemption for both combatant and noncombatant service which reads:
"(B) I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in non-combatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and non-combatant training and service in the Armed Forces."
The defendant placed quotation marks around the word "religious" and struck out the words "training and."
In response to the Series II question, "1. Do you believe in a Supreme Being?" the defendant checked neither the "Yes" nor the "No" box but added a third box and the notation: "Please see attached sheet." The Board was also referred to the attached sheet for the answer to the Series II question:
"2. Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation."
*518 In the five-page statement attached to the Special Form the defendant stated in answer to the question as to his belief in a Supreme Being:
"Of course, the existence of God cannot be proven or disproven, and the essence of his nature cannot be determined. I prefer to admit this and leave the question open rather than answer `yes' or `no'. * * *"
His answer to Series II, question 2, describing the views on which his objections to service are based, does not reflect that he believes in a Supreme Being imposing obligations on him superior to those arising from any human relation.
The defendant was continued in classification 2-S until August 26, 1958, when he was reclassified 1-A. On October 17, 1958, defendant was ordered to report for a pre-induction physical on October 29, 1958. On October 20, 1958, the Board received a request for a personal appearance, which was had on October 21, 1958. Following the personal appearance the Board voted to continue the 1-A classification.
The defendant prosecuted an appeal to the Appeal Board. The Appeal Board tentatively determined that he was not entitled to classification 1-O and forwarded the file to the Department of Justice for an advisory opinion.
The Federal Bureau of Investigation conducted a background investigation. Its reports were summarized in a résumé (Ex. 30B) and the files assigned to a Hearing Officer. The defendant was provided with a copy of the résumé prior to the hearing which was held on September 10, 1959. Two witnesses appeared on defendant's behalf. The hearing officer reported to the Department of Justice that he found the defendant to be sincere in his objection to war and recommended that exemption be granted. The Department of Justice, however, concluded that the defendant's objections were not based upon religious training and belief as required and defined by § 6(j) of the Universal Military Training and Service Act, and recommended to the Appeal Board that the exemption be denied.
The Appeal Board furnished the defendant with a copy of the Department of Justice recommendation and received a reply from him. The Appeal Board classified the defendant 1-A by unanimous vote on May 24, 1960. Upon the defendant's request, the National Director of Selective Service appealed on his behalf to the Presidential Appeal Board. The Presidential Appeal Board classified the defendant 1-A by a unanimous vote on August 25, 1960.
On October 3, 1960, defendant's Local Board mailed him an Order to Report for Induction on October 20, 1960 at the Armed Forces Examination and Induction Station, 39 Whitehall Street, New York, N. Y. On October 20, 1960, the defendant reported as directed and after having been found acceptable for military service refused to submit to induction.
Counsel also stipulated (Ex. 6) that defendant "refused to submit to induction at the time and place aforesaid claiming that the order was invalid as he had wrongfully been denied exemption as a conscientious objector."
Therefore, the sole issue that remains is the validity of the denial of exemption. In this connection, defendant argues that 50 U.S.C.Appendix § 456(j) is unconstitutional.

THE SCOPE OF JUDICIAL REVIEW
"There is no direct judicial review of the actions of the Appeal Boards. Questions concerning the classification of the registrant may be raised either in a petition for habeas corpus or as a defense to prosecution for failure to submit to induction into the armed forces." Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392, 393-394, 99 L.Ed. 428 (1954); see also Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).
"The range of review is the narrowest known to law." United States v. Corliss, *519 280 F.2d 808, 811 (2 Cir., 1960), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105; Blalock v. United States, 247 F.2d 615 (4 Cir., 1957); Campbell v. United States, 221 F.2d 454 (4 Cir., 1955).
As was said in Blalock, supra, 247 F.2d at page 619:
"The `clearly erroneous' rule applied in equity appeals has no place here, nor even the `substantial evidence' rule of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Congress gave the courts no general authority of revision over draft board proceedings, and we have authority to reverse only if there is a denial of basic procedural fairness or if the conclusion of the board is without any basis in fact. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Goff v. U. S., 4 Cir., 135 F.2d 610."
This court has defined its function as follows:
"The function of the District Court in cases such as these is to examine the entire file or record relating to the registrant's claim for conscientious objector classification to determine if there is any basis in fact to support the Board's determination. `When the record discloses any evidence of whatever nature which is incompatible with the claim of exemption we may not inquire further as to the correctness of the board's order.' United States v. Simmons, 7 Cir., 1954, 213 F.2d 901, 904, reversed on other grounds Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453. Courts cannot substitute their judgment on the weight of the evidence for that of the Board. Nor need they look for substantial evidence to support such determination." United States v. Corliss, 173 F.Supp. 677, 680 (S.D.N.Y.1959), aff'd 280 F.2d 808 (2 Cir., 1960), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105.

THE REPORTS OF THE FEDERAL BUREAU OF INVESTIGATION AND THE HEARING OFFICER
Defendant contends that he was denied due process because he was not given copies of the above reports. This contention is without merit. The Appeal Board's denial of defendant's claim for exemption was based upon the recommendation of the Department of Justice (Ex. 30A), which, in turn, rested essentially on statement of non-belief filed by the defendant. This being the case, defendant has no right to either set of reports. Gonzales v. United States, 364 U.S. 59, 63-66, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960). See also United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953); United States v. Corliss, 280 F.2d 808, 810 (2 Cir., 1960), cert. denied 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960).

CONSTITUTIONALITY OF TITLE 50 U.S.C.APPENDIX § 456(j)
The pertinent provisions of Title 50 U.S.C.Appendix § 456(j) are as follows:
"(j) Nothing contained in this title [sections 451-454 and 455-471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. * * *"
Section 5(g) of the Selective Training and Service Act of 1940 (50 U.S.C.Appendix § 305(g)) provided as follows:
"Nothing contained in this Act shall be construed to require any person to be subject to combatant training and service in the land or *520 naval forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form."
In amending the 1940 Act and in enacting Section 6(j) of the 1948 Act (which is identical with § 6(j) of the 1951 Act here under discussion, Congress added the following language to the quotation above from the 1940 Act:
"Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."
Defendant's contentions as to the unconstitutionality of the above-mentioned clause are as follows:
1. Congress by passage of the 1948 amendment restricted a prior definition and the concept of "Religious training and belief" so as to relate it only to a belief "in a relation to a Supreme Being."
2. Congress thus created a preference and an aid in favor of conscientious objectors who have a belief in a Supreme Being against those whose objection is related to or based upon some other type of religious training and belief or on a non-religious training and belief.
3. Congress has thus, in effect, established as an official religion a religion that is related to a belief in a Supreme Being and has placed the support of the government behind this particular religious belief, thus violating the Establishment Clause of the First Amendment, the Due Process Clause of the Fifth Amendment, and the religious test clause of Article VI, Clause 3 of the Constitution providing that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."
The First Amendment to the United States Constitution, in the applicable portion, states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The Fifth Amendment provides that Congress may not deprive a person of life, liberty or property without due process of law.
There was proof by stipulation that the grounds on which defendant claimed exemption are religious and arise from religious training and belief by reason of which defendant is conscientiously opposed to participation in war fall within the definitions of religion as set forth in the following cases, determined by the Second Circuit Court of Appeals: United States v. Kauten, 133 F.2d 703 (1943); United States ex rel. Phillips v. Downer, 135 F.2d 521 (1943); United States ex rel. Reel v. Badt, 141 F.2d 845 (1944), cert. dismissed 328 U.S. 817, 66 S.Ct. 979, 90 L.Ed. 1599. (See minutes 35, 36)
In substance, those cases decided under the 1940 Act held that a sincere, absolute abhorrence of all war as ethically wrong, proceeded from a "religious impulse" and met the test of the statute, which, in the same language as the 1948 and 1951 Acts, exempted one who "by reason of religious training and belief is * * * opposed to participation in war in any form" without further elaboration. A diametrically contrary conclusion was reached by the Ninth Circuit Court of Appeals in Berman v. United States, 156 F.2d 377 (9 Cir., 1946), cert. denied, 329 U.S. 795, 67 S.Ct. 480, 91 L.Ed. 680. It was there held that Congress intended to exempt only those who based their objections on belief in a deity commanding abstinence from war on pain of supernatural sanction.
In enacting Section 6(j) of the 1948 Act (which is identical with Section 6(j) of the 1951 Act here under discussion), Congress explicitly adopted the view of the Berman case and added the limiting definition:
"Religious training and belief in this connection means an individual's belief in a relation to a Supreme *521 Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."
See Selective Service Act of 1948 Senate Committee Report, United States Code Congressional Service, 80th Congress, 1948, 2d Session, P. 1989 at p. 2002.
However, a defendant's inability to assert a belief in a Supreme Being as a basis for the claim of exemption has been sustained as sufficient for a denial of a claim for exemption. United States v. Bendik, 220 F.2d 249 (2 Cir., 1955); United States v. DeLime, 223 F.2d 96 (3 Cir., 1955); Davidson v. United States, 225 F.2d 836 (9 Cir., 1955); Clark v. United States, 236 F.2d 13 (9 Cir., 1956), cert. denied, 352 U.S. 882, 77 S.Ct. 101, 1 L.Ed.2d 80.
In the Bendik case, supra, Judge Smith, speaking for the Second Circuit, wrote:
"* * * the sincerity of his conscientious scruples against service was immaterial, since admittedly they were not founded on belief in a Supreme Being, a requirement as a ground for deferment under the Act. 50 U.S.C.A.Appendix, § 456 (j). Berman v. United States, 9 Cir., 156 F.2d 377, certiorari denied 329 U.S. 795, 67 S.Ct. 480, 91 L.Ed. 680. * * *" (220 F.2d p. 252)
In Clark, supra, the defendant raised the same constitutional questions relied upon by defendant here but the Ninth Circuit upheld denial of exemption. Certiorari was denied. See also George v. United States, 196 F.2d 445 (9 Cir., 1952), cert. denied, 344 U.S. 843, 73 S.Ct. 58, 97 L.Ed. 656.
There is no violation of the religious test provision of Article VI, Clause 3. Exemption from military service can hardly be deemed an "Office or public Trust under the United States." Such a view is indeed specious. Clark v. United States, 236 F.2d 13, 23 (9 Cir., 1956), cert. denied, 352 U.S. 882, 77 S.Ct. 101, 1 L.Ed.2d 80. Cf. Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961).
Likewise, Congress has not established a church or coerced religious belief, in violation of Amendment I. (Arver v. United States (Selective Draft Law Cases), 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918)) Congress has not set up a state church, nor aided any religion, nor compelled attendance or non-attendance at any church. Neither has it compelled profession or refraining from profession of any belief or disbelief, nor imposed punishment for any conduct. No financial support of government has been devoted to any particular religious belief (cf. Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947)) nor has any compulsive religious service been supported (cf. Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962)).
Congress, by Article 1, Section 8, is given power to raise and support armies and to provide and maintain a navy. Therefore, "Congress has power to raise armies, to determine who shall serve in such armies, and who shall be exempt, in time of peace and in time of war. Such powers are essential to national security. See United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; United States v. Henderson, 7 Cir., 1950, 180 F.2d 711, certiorari denied, 1950, 339 U.S. 963, 70 S.Ct. 997, 94 L.Ed. 1372; Richter v. United States, 9 Cir., 1950, 181 F.2d 591, certiorari denied, 1950, 340 U.S. 892, 71 S.Ct. 199, 95 L.Ed. 647; Warren v. United States, 10 Cir., 1949, 177 F.2d 596, certiorari denied, 1950, 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584. * * *" United States v. Bartell, 144 F.Supp. 793, 796 (S.D.N.Y.1956). The question of exemption from military service is a part of the procedure of raising an army, which is vested in Congress and its instrumentalities. United States ex rel. Goodman v. Hearn, 153 F.2d 186, 188 (5 Cir., 1946), cert. dismissed, 329 U.S. 667, 67 S.Ct. 24, 91 L.Ed. 589. The war power tolerates no limitations except *522 those found in the Constitution or in applicable principles of international law. United States v. Macintosh, 283 U.S. 605, 622, 51 S.Ct. 570, 75 L.Ed. 1302, overruled on other grounds, Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946).
Defendant relies upon certain decisions of the United States Supreme Court postdating draft exemption determinations, to wit, Torcaso v. Watkins, 367 U.S. 488, 495, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); Engel v. Vitale, 370 U.S. 421, 430, 431, 432, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Everson v. Board of Education, 330 U.S. 1, 15, 16, 67 S.Ct. 504, 91 L.Ed. 711 (1947); People of State of Ill., ex rel. McCollum v. Board of Education, 333 U.S. 203, 210, 211, 68 S.Ct. 461, 92 L.Ed. 649 (1948).
There is nothing in these decisions to justify the position defendant takes. Torcaso, supra, 367 U.S. at 493, 81 S.Ct. at 1682-1683, 6 L.Ed.2d 982 quotes from Everson, supra: "Neither [i. e., state or nation] can pass laws which aid one religion, aid all religions, or prefer one religion over another." I do not interpret this statement to make it improper for Congress to exempt from military service certain individuals who are defined in the statute in question. Such a policy does not aid one religion or all religions or prefer one religion over another. It merely classifies those who, under certain conditions there specified, may secure exemption from military service. Certain individuals are affected but not religious organizations. Everson, supra, like McCollum, supra, involved questions of the power of a state to utilize its tax-supported public school system in aid of religious instruction. Neither does it appear that defendant can draw any aid or comfort from McGowan v. Maryland, supra, which related to Sunday Closing Laws, or from Engle v. Vitale, supra, the public school prayer case.
Other cases such as Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Washington Ethical Society v. District of Columbia, 101 U.S. App.D.C. 371, 249 F.2d 127 (1957); and Fellowship of Humanity v. County of Alameda, 153 Cal.App.2d 673, 315 P.2d 394, have no bearing, as I see it, upon the claim of defendant.
Since the Congress has the right to determine who shall serve and who shall be exempt, it has the power to define the categories of those who may be thus exempted. Rase v. United States, 129 F.2d 204 (6 Cir., 1942); United States v. Bartell, 144 F.Supp. 793, 796 (S.D.N.Y.1956); see also Korte v. United States, 260 F.2d 633 (9 Cir., 1958), cert. denied, 358 U.S. 928, 79 S.Ct. 313, 3 L.Ed.2d 301. Therefore, exemption from military service is a matter of legislative grace and not a matter of right. Korte v. United States, supra, 260 F.2d at 635.
In short, defendant's attack on the clause here involved is not new. Congress is bound to raise armies. No invidious discrimination exists. It is within the power of Congress to enable reasonable classifications to achieve the ends sought. No religion is thereby established. No freedom of worship is invaded. No compulsive acts are required. All persons of the class of defendant receive equal treatment. Congress, which has a right to refuse all exemptions, has a clear right to limit such exemptions. The statute determines those who may come within the terms of the exemptive grace, the policy which the legislative branch is empowered to select. The section involved is constitutional and there was a "basis in fact" for the Appeal Board's denial of exemption.
The defendant is, therefore, held guilty. Sentence is set for Wednesday, May 15, 1963, at 10:00 A.M. in Room 705. The customary pre-sentence report is to be prepared.