No. 1044, Misc. HART v. UNITED STATES. C. A. 3d Cir. Certiorari denied. *Mercer D. Tate* for petitioner. *Solicitor General Griswold, Assistant Attorney General Vinson,* and *Beatrice Rosenberg* for the United States.

MR. JUSTICE DOUGLAS, dissenting.

In 1962 when petitioner was classified by his Local Board pursuant to the Universal Military Training and Service Act of 1948, 62 Stat. 604 (now the Military Service Act of 1967), as amended, 81 Stat. 100, 50 U. S. C. App. § 451 *et seq.* (1964 ed., Supp. III), he

sought classification both as a minister (see § 6 (g) and § 16 (g) of the Act) and as a conscientious objector (§ 6 (j)). In his classification questionnaire he described himself as an ordained minister of the Jehovah's Witnesses and stated he was opposed to war in any form and conscientiously objected to participation in noncombatant service in the Armed Forces. The Local Board, in February 1962, classified petitioner as a conscientious objector but denied the ministerial exemption. Petitioner did not seek administrative appeal.

Through October 1964 petitioner wrote a series of letters to the Board describing in more detail his activities as a minister and claiming religious objection to participation in civilian work projects which may be required of registrants classified as conscientious objectors.[1] He stated that under his religious beliefs he was no part of the world governed by secular political systems and could not accept work in a civilian program which substituted for military service. However, he did not formally request reopening of his classification.

On March 25, 1965, the Board mailed to petitioner an order to report to the Board on April 5, 1965, for instructions respecting a civilian work assignment at a state hospital. Petitioner failed to obey the order and was charged by indictment with willful failure to report, in

---

[1] Section 6 (j) provides in part that a conscientious objector who is also opposed to noncombatant military service, shall in lieu of induction "be ordered by his local board, subject to such regulations as the President may prescribe, to perform . . . such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed . . . to have knowingly failed or neglected to perform a duty required of him under this title." This language is carried over with only slight modification into the 1967 Selective Service Act.

violation of § 12 (a) of the Act.[2]   At his nonjury trial, petitioner presented no evidence but moved for acquittal in part on the ground that civilian work under § 6 (j) of the Act could not constitutionally be required of him. The motion was denied, he was convicted and sentenced to four years' imprisonment, and the judgment was affirmed.   *United States* v. *Hart,* 382 F. 2d 1020 (C. A. 3d Cir.) (*per curiam*).

Petitioner urges that the power of Congress under Art. I, § 8, of the Constitution to "raise and support armies" does not authorize a draft in time of peace.   His argument is: "There is no declared war being conducted today by the United States; thus, the justifications usually given for the draft program, as in the *Selective Draft Law Cases,* 245 U. S. 366 (1918) are not applicable."   The Government, in response, claims "[i]t has long been settled that the power to raise armies by conscription is not limited to wartime," and cites *United States* v. *Henderson,* 180 F. 2d 711 (C. A. 7th Cir.), cert. denied, 339 U. S. 963, and *Etcheverry* v. *United States,* 320 F. 2d 873 (C. A. 9th Cir.), cert. denied, 375 U. S. 930.

Petitioner's other contentions are that there was no basis in fact for the Local Board's denial of a minister's exemption, see *United States* v. *Seeger,* 380 U. S. 163, *Estep* v. *United States,* 327 U. S. 114; that his First Amendment rights to freedom of religion have been abridged; and that the congressional power to raise armies does not, as limited by the Necessary and Proper Clause

---

[2] Section 12 (a) provides in part: "Any member of the Selective Service System . . . charged as herein provided with the duty of carrying out any of the provisions of this title, or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty . . . shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both . . . ."

of Art. I, § 8, authorize draft of conscientious objectors for civilian work so long as there are men in the draft pool eligible for combatant service who are not called for induction.

The Government contends that petitioner does not have standing to attack denial of the minister's exemption because he did not take an administrative appeal of his classification by the Local Board. But the Government quite properly does not claim this bars judicial review of the peacetime draft issue; for it is clear that whatever effect the exhaustion of administrative remedies doctrine may have on the classification issues, it is wholly inapplicable to the constitutional question.

In the first place, at the time of petitioner's classification in February 1962 the question of constitutionality of a peacetime draft was not ripe for review. Petitioner had not then been called for induction and for all that was then known might never be called. It was on July 28, 1965, with the announcement of the President that the strength of our armed forces in Viet Nam would be increased from 75,000 to 125,000 men and monthly draft calls enlarged from 17,000 to 35,000 that the Nation as a whole first probably realized that the Southeast Asian conflict would result in an extensive peacetime draft at home. See 1 Weekly Compilation of Presidential Documents 15 (1965). The impact of the announcement was felt by a rise in number of inductions from 103,328 in 1965 to 343,481 in 1966. See Director of Selective Service, 1966 Annual Report 25 (1967). Petitioner himself had already been "drafted" by that time; but nothing in the Universal Military Training and Service Act or in the regulations promulgated pursuant to it makes the Local Board's March 25, 1965, order to petitioner to report for instructions on civilian work appealable.

Secondly, the Appeal Boards in the Selective Service System do not appear to have jurisdiction to pass on constitutional questions; nor may registrants appeal such questions to them. Under 32 CFR § 1626.2 (a) the registrant may appeal his "classification" and the Appeal Board "shall classify the registrant" (32 CFR § 1626.26 (a)). The Appeal Board's jurisdiction is limited to review of decisions of the Local Boards (32 CFR § 1604.24), and nothing in the Act or Regulations indicates that Local Boards may pass on the constitutionality of a peacetime draft. It would be incongruous indeed to believe that Congress gave the Local Boards this power, since Congress itself specifically provided for a peacetime draft in § 4 (a) of the Act, which states in part: "The President is authorized, from time to time, *whether or not a state of war exists,* to select and induct into the Armed Forces of the United States for training and service . . . such number of persons as may be required to provide and maintain the strength of the Armed Forces." (Emphasis added.)

Thirdly, even if petitioner's Appeal Board could have considered the constitutional question raised here, it seems clear that an appeal on such ground would have been a futile gesture (see *Wolff* v. *Selective Service Local Board No. 16,* 372 F. 2d 817, 825 (C. A. 2d Cir.)), since it would be equivalent to asking the Selective Service System severely to undercut its own authority and to overrule itself (see *Public Utilities Commission of California* v. *United States,* 355 U. S. 534, 539; 3 Davis, Administrative Law § 20.04 (1958)). Accordingly, petitioner has standing to attack the peacetime draft.

The constitutional question presented is precisely the one tendered in *Holmes* v. *United States, ante,* p. 936. I have dissented from a denial of certiorari in that case. This petition should likewise be granted and the case put down for argument along with *Holmes* v. *United States.*