UNITED STATES of America

v.

James Harrison BRANIGAN, Jr.,
Defendant.

UNITED STATES of America

v.

Sammie Lee BROWN, Defendant.

UNITED STATES of America

v.

Christopher Strater ROBINSON,
Defendant.

UNITED STATES of America

v.

Ronald P. MOYER, Defendant.

Nos. 68 Cr. 284, 68 Cr. 286, 68 Cr. 289,
68 Cr. 490.

United States District Court
S. D. New York.

April 11, 1969.

226

Robert M. Morgenthau, U. S. Atty., for the Southern Dist. of New York, New York City, for United States, John R. Wing, Asst. U. S. Atty., of counsel in 68 Cr. 284, James W. Brannigan, Jr., Asst. U. S. Atty., of counsel in 68 Cr. 286 and 68 Cr. 289, John R. Robinson, Asst. U. S. Atty., of counsel in 68 Cr. 490.

Sanford M. Katz, New York City, for defendant Branigan.

Frederick B. Boyden, New York City, for defendant Brown.

Beldock, Levine & Hoffman, New York City, for defendant Robinson, Myron Beldock, Lawrence S. Levine, Eric D. Martins, New York City, of counsel.

Frederick H. Cohn, Sanford M. Katz, New York City, for defendant Moyer.

EDWARD WEINFELD, District Judge.

These are various motions by defendants in four separate indictments, wherein each defendant is charged under the Selective Service Act with unlawful refusal to submit to induction.[1] The defendant Robinson also is accused of unlawful failure to have his classification card in his possession; the defendant Branigan, both his classification and registration cards. Since the respective motions by each defendant in substantial respects parallel one another and present common issues, they may be considered together.

I

All the defendants challenge the array of the grand jury that indicted them, charging that the process of jury selection then in effect in this district reflected a policy of intentional and systematic discrimination against persons under 35, the poor, Negroes and Puerto Ricans.[2] Similar challenges have been repeatedly rejected by our Court of Appeals.[3] The only new issue advanced is the alleged discriminatory exclusion of persons under 35 years of age. However, this challenge requires no different result, since "it is a matter of common knowledge * * * that many women in the younger age groups have responsibilities of care for young children, and that many persons of both sexes in the younger age categories are away from home at school, and in the case of men, in military service."[4] This branch of the motion to dismiss is denied.

1. Military Selective Service Act of 1967 (hereinafter "Act"), § 12(a), 50 U.S.C. App. § 462(a).

2. Effective in December, 1968, the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., instituted a revised method for the selection of federal grand juries. Thereafter, pursuant to the statute, a plan was adopted and approved for this district. Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the Southern District of New York, June 26, 1968 (as amended); see also In re Review of the Jury Selection Plan (2d Cir. Reviewing Panel Oct. 8, 1968).

3. United States v. Bennett, 409 F.2d 888, 892 (2d Cir. Feb. 26, 1969); United States v. Wolfson, 405 F.2d 779, 784 (2d Cir. 1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969); United States v. Caci, 401 F.2d 664, 671 (2d Cir. 1968), cert. denied, 394 U.S. 917, 89 S.Ct. 1180, 22 L.Ed.2d 450 (1969); United States v. Bowe, 360 F.2d 1, 7 (2d Cir.), cert. denied, 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966), 385 U.S. 1042, 87 S.Ct. 779, 17 L.Ed.2d 686 (1967); United States v. Kelly, 349 F.2d 720, 778 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); United States v. Holt, 333 F.2d 455, 459 (2d Cir. 1964), cert. denied sub nom. Roth v. United States, 380 U.S. 942, 85 S.Ct. 1020, 13 L.Ed.2d 961 (1965); United States v. Agueci, 310 F.2d 817, 833–834 (2d Cir. 1962), cert. denied sub nom. Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Dennis, 183 F.2d 201, 216–224 (2d Cir.), cert. denied as to this issue, 340 U.S. 863, 71 S.Ct. 91, 95 L.Ed. 630 (1950).

4. United States v. Cohen, 275 F.Supp. 724, 740 (D.Md.1967) (three-judge court). Cf. Pope v. United States, 372 F.2d 710, 723 (8th Cir. 1967), vacated on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968); King v. United States, 346 F.2d 123, 124–125 (1st Cir. 1965); Britton v. Bullen, 275 F.Supp. 756, 760 (D.Md.1967); United States v.

■ Defendants also attack the petit jury array on the same grounds as those advanced with respect to the grand jury. But this challenge is premature, since it cannot now be determined whether any basis exists for challenge to those jurors who may be drawn for the defendants' trial under the recently effective Jury Selection and Service Act. Accordingly, this branch of the motion is denied as premature.[5]

■ Moyer and Branigan contend that count 1 of their indictments is fatally defective for failure to allege that the defendants were ordered to report for induction pursuant to the order of call established by the Regulations.[6] The argument is without merit. The indictment charges the defendants with refusal to submit to induction, a duty required of them under the Act and the rules and regulations made pursuant thereto. This allegation is cloaked with the presumption of regularity in the administrative process.[7] Thus, the Government, as part of its case in chief upon the trial, may rely upon the presumption to establish the validity of the call-up order.[8] And while the issue may be raised by the defense, assuming it is a valid defense, thereby putting the Government to its proof in rebuttal, there is no requirement that the indictment affirmatively negate claimed defenses to the indictment—in short, the indictment need only allege the essential elements of the crime charged. The indictment against each defendant is sufficient to inform him of the elements of the charge against which he must defend himself to protect him against double jeopardy on the same charge and to enable the court to decide whether the facts alleged are sufficient in law to withstand a motion to dismiss

Duke, 263 F.Supp. 828, 832 (S.D.Ind. 1967).

Defense counsel in these cases have represented, both in their pretrial briefs and motions and at the oral argument, that with respect to the grand jury issue they rest on the pleadings and factual presentations in United States v. Leonetti, 291 F.Supp. 461 (S.D.N.Y.1968) (appeal pending), where other, unrelated defendants mounted a challenge to the arrays in their cases. In *Leonetti*, Judge Tyler granted extensive discovery with respect to the grand jury claims, conducted a full hearing and, in a comprehensive opinion, rejected the claims advanced before him. His findings and conclusions have now been expressly approved by the Court of Appeals. United States v. Bennett, 409 F.2d 888, 893 (2d Cir. Feb. 26, 1969).

5. Compare 28 U.S.C. § 1867. And see United States v. Curry, 358 F.2d 904, 916–918 (2d Cir. 1966); United States v. Woodner, 317 F.2d 649, 651 (2d Cir.), cert. denied, 375 U.S. 903, 84 S.Ct. 192, 11 L.Ed.2d 144 (1963); United States v. Flynn, 216 F.2d 354, 378–388 (2d Cir. 1954), cert. denied, 348 U.S. 909, 75 S. Ct. 295, 99 L.Ed. 713 (1955).

6. 32 C.F.R. § 1631.7.

7. United States v. Sandbank, 403 F.2d 38, 40 n. (2d Cir. 1968), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969). Cf. Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 241, 89 S.Ct. 414, 418, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring): "It is properly presumed that a registrant's board has fully considered all relevant information presented to it, and that it has classified and processed him regularly, and in accordance with the applicable statutes and regulations."

8. United States v. Sandbank, 403 F.2d 38, 40 n. (2d Cir. 1968), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969); Campbell v. United States, 396 F.2d 1 (5th Cir. 1968); Pigue v. United States, 389 F.2d 765 (5th Cir. 1968); Lowe v. United States, 389 F.2d 51, 52 (5th Cir. 1968); Greer v. United States, 378 F.2d 931, 933 (5th Cir. 1967). But see Yates v. United States, 404 F.2d 462, 465–466 (1st Cir. 1968).

Defendants rely upon United States v. Lybrand, 279 F.Supp. 74, 76–77 (E.D. N.Y.1967). But that case is not to the contrary; it holds that the Government must prove at the trial that a I–O registrant charged with failure to report for civilian work was ordered "to perform such work * * * not * * * prior to the time that [he] * * * would have been ordered to report for induction if he had not been classified * * * I–O * * *." 32 C.F.R. § 1660.20(a), (b). The holding of *Lybrand* has been expressly disapproved by our Court of Appeals. United States v. Sandbank, supra.

the indictment or to support a conviction following a trial.[9]

■■ Branigan also moves to dismiss counts 2 and 3 of his indictment, which charge him with non-possession of his registration and classification certificates, on the ground they do not charge criminal offenses under the statute. The claim is without merit. The regulations impose upon a registrant the duty to have in his personal possession at all times both his registration and his classification cards.[10] Section 12(a) of the Act makes it a criminal offense for a registrant knowingly to "fail * * * or refuse to perform any duty required of him under or in the execution of [the Act] * * * or rules, regulations, or directions made pursuant to [the Act]. * * *."[11] Thus, upon its face, the statute transmutes into a criminal offense a registrant's failure to comply with the above mentioned regulations. However, Branigan contends that the statute does not come into play in this instance, since neither regulation contains any "suggestion" that a violation will result in criminal sanctions. He argues that the deletion in 1942 of a provision in the then existing regulation,[12] making non-possession of the registration card "a violation of these Regulations,"[13] leaves in force only the sanction that such non-possession "shall be prima facie evidence of * * * failure to register"; in short, the change reflected, and practice confirmed, an administrative policy that non-possession was no longer to be considered a violation, involving criminal sanctions. The argument fails on a number of grounds. First, since the registration regulation expressly imposes the duty of possession which brings a breach thereof within section 12 of the Act, there is no requirement that it also specify that a violation of its provisions constitutes a criminal offense. Apart from the fact that it would be needless repetition, which probably accounts for its deletion in 1942,[14] the contention would give greater force to the regulation than to the statute. An administrative edict cannot overcome a statute which is the source of its authority.[15] Second, the defendant concedes that the regulation governing the classification certificate lacks a similar history to that of the registration provision—that is, at no time has that regulation provided that a violation would constitute a criminal offense, and so no such provision has ever been deleted. The defendant brushes this aside with the observation that a violation of the classification-card regulation is less serious than a violation of the registration-card regulation. The law, however, recognizes no such distinction, nor is there any basis for the purported distinction. As the Supreme Court pointed out in United States v. O'Brien: "The issuance of certificates indicating the registration and eligibility classification of individuals is a legitimate and substantial administrative aid in the functioning of this system."[16]

9. United States v. Lamont, 18 F.R.D. 27, 30–31 (S.D.N.Y.1955), aff'd, 236 F.2d 312 (2d Cir. 1956). See also Russell v. United States, 369 U.S. 749, 768 n. 15, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Wong Tai v. United States, 273 U.S. 77, 80–81, 47 S.Ct. 300, 71 L.Ed. 545 (1927).

10. 32 C.F.R. §§ 1617.1, 1623.5.

11. 50 U.S.C.App. § 462(a).

12. This deletion was carried over into subsequently promulgated regulations under the successor Acts, and the current regulation under the present Act is substantially the same.

13. *Compare* 7 Fed.Reg. 9683 (Nov. 23, 1942) *with* 7 Fed.Reg. 395 (Jan. 16, 1942); 6 Fed.Reg. 81 (Dec. 31, 1940). See generally Dranitzke, Possession of Registration Certificates and Notice of Classification by Selective Service Registrants, 1 S.S.L.R. 4029 (1968).

14. See Selective Training and Service Act of 1940, § 11, 54 Stat. 894–895.

15. See, e.g., Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

16. 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

Finally, the contention that as a matter of administrative practice the possession requirement was not intended to be enforced by criminal prosecution is at once challenged by prosecutions and convictions for non-possession of registration or classification certificates which have been upheld by the courts.[17] That earlier prosecutions for non-possession may have been grounded on subsection (b) and not on subsection (a) of section 12 is of no significance; subsection (a) is broad enough to permit prosecution for the offense here alleged. The choice of subsection to be used rests with the prosecutor.

## II

Defendants Brown and Branigan mount a two-pronged attack upon the Act as unconstitutional upon its face and as applied to them. This attack is directed to the exemption for ministers and divinity students,[18] and the deferment for college students.[19] According to the defendants, not only must these provisions be stricken as unconstitutional, but the balance of the Act is not saved by the severability clause.[20] They contend the voiding of the challenged provisions would do such violence to the basic exemption and deferment policy of the Act as to alter materially the congressional Selective Service policy—in effect, for the judiciary to strike down only the alleged invalid provisions and to permit other aspects of the draft system to remain encroaches upon the power of Congress, which alone has the power to enlarge or restrict the classes subject to induction or to be exempted from service.[21]

### (a) The ministerial and divinity student exemption.

▃▃▃▃▃ Here the essence of the defendants' attack is that the ministerial exemption violates the First Amendment's prohibition of the establishment of religion; that it constitutes an impermissible classification that invidiously discriminates against defendants and others who are not ministers or divinity students in violation of their rights under the due process clause of the Fifth Amendment. The contention cannot be sustained. The power of Congress to grant exemptions and deferments is indeed broad. Its authority to classify and to conscript manpower for military service is beyond question.[22] In exercising that authority, Congress may, in the national interest, provide complete exemption from service for some and partial exemption for others.[23] This determination, insofar as it centers about the

17. O'Brien v. United States, 376 F.2d 538, 541 (1st Cir. 1967), vacated as to this point, 391 U.S. 367, 386, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); United States v. Kime, 188 F.2d 677 (7th Cir.), cert. denied, 342 U.S. 823, 72 S.Ct. 41, 96 L.Ed. 622 (1951); United States v. Hertlein, 143 F.Supp. 742, 746 (E.D. Wis.1956); United States v. Minder, 63 F.Supp. 369 (S.D.Calif.1945), aff'd per curiam, 157 F.2d 856 (9th Cir. 1946); United States v. Olson, 253 F. 233, 234 (W.D.Wash.1917).

18. Act, § 6(g), 50 U.S.C.App. § 456(g); 32 C.F.R. § 1622.43.

19. Act, § 6(h)(1), 50 U.S.C.App. § 456 (h)(1); 32 C.F.R. § 1622.25–.26.

20. Act, § 15(c), 50 U.S.C.App. § 465(c).

21. Cf. Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 542–543, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). See also National Life Ins. Co. v. United States, 277 U.S. 508, 534–535, 48 S.Ct. 591, 72 L.Ed. 968 (1928) (Brandeis, J., dissenting).

22. United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); cf. Lichter v. United States, 334 U.S. 742, 756, 68 S.Ct. 1294, 92 L. Ed. 1694 (1948); Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L. Ed. 349 (1918).

23. Korte v. United States, 260 F.2d 633, 635 (9th Cir. 1958), cert. denied, 358 U.S. 928, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959); United States v. Palmer, 223 F.2d 893, 896 (3d Cir.), cert. denied, 350 U.S. 873, 76 S.Ct. 116, 100 L.Ed. 772 (1955); United States ex rel. Lipsitz v. Perez, 260 F.Supp. 435, 440 (D.S.C. 1966), aff'd, 372 F.2d 468 (4th Cir.), cert. denied, 389 U.S. 838, 88 S.Ct. 57, 19 L.Ed.2d 100 (1967).

national welfare, is a matter of legislative grace.[24] Thus, Congress could conclude that in the national interest certain classes of otherwise eligible males should be excused from service and that ministers could be among them.[25] That we are a religious people made up of adherents of many faiths and sects is an historical fact.[26] The exemption provision, by its recognition that religion is a significant fact in the nation's life, does not thereby violate the mandate of government neutrality in matters of religion. It neither forces nor influences any person to attend or not attend a house of worship or to profess a belief or disbelief in any religion.[27] The injunction of neutrality does not require hostility toward religion. Indeed, the four dissenters in Everson v. Board of Education, speaking through Mr. Justice Rutledge, observed that: "Our constitutional policy * * * does not deny the value or the necessity for religious training, teaching or observance. Rather it secures their free exercise."[28] Congress, in the exercise of its broad power, could determine that ministerial exemption was required to secure to the masses of our citizens their constitutional right to the free exercise of their religion and that not to grant the exemption interferes with that fundamental guarantee.[29]

Thus, Mr. Justice Brennan, in School Dist. of Abington Township, Pa. v. Schempp, postulated that even upon an assumption that a congressional provision contravened the Establishment Clause, nonetheless it could be sustained as necessary to secure the right guaranteed under the Free Exercise clause.[30] He expressed the view: "Such a principle might support, for example, the constitutionality of draft exemptions for ministers and divinity students."[31] And in a somewhat related reference to the issue, Mr. Justice Stewart, in his concurrence in Sherbert v. Verner, was of the opinion "that the guarantee of religious liberty embodied in the Free Exercise Clause affirmatively requires government to create an atmosphere of hospitality and accommodation to individual belief or disbelief. In short, I think our Constitution commands the positive protection by government of religious freedom—not only for a minority, however small—not only for the majority, however large—but for each of us."[32]

The Establishment Clause claim was advanced, and summarily rejected, by the Supreme Court when raised in the challenge to the 1917 Draft Act.[33] While the defendants argue, in the light of subsequent First Amendment develop-

24. Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 98 L.Ed. 132 (1953): Parrott v. United States, 370 F.2d 388, 391 (9th Cir. 1966), cert. denied sub nom. Lawrence v. United States, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed. 2d 625 (1967); United States v. Mohammed, 288 F.2d 236, 242 (7th Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 37, 7 L.Ed.2d 26 (1961).

25. See Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); Dickinson v. United States, 346 U.S. 389, 394–395, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Van Bibber v. United States, 151 F.2d 444, 446–447 (8th Cir. 1945); United States v. Bartell, 144 F.Supp. 793, 796–797 (S.D.N.Y.1956).

26. Cf. School Dist. of Abington Township, Pa. v. Schempp, 374 U.S. 203, 212–214,

83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); Zorach v. Clauson, 343 U.S. 306, 313–314, 72 S.Ct. 679, 96 L.Ed. 954 (1952).

27. Cf. Everson v. Board of Education, 330 U.S. 1, 15, 67 S.Ct. 504, 91 L.Ed. 711 (1947).

28. Id. at 52, 67 S.Ct. at 529.

29. Cf. Dickinson v. United States, 346 U.S. 389, 394–395, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

30. 374 U.S. 203, 296–299, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (concurring opinion).

31. Id. at 298, 83 S.Ct. at 1611.

32. 374 U.S. 398, 415–416, 83 S.Ct. 1790, 1800, 10 L.Ed.2d 965 (1963).

33. Selective Draft Law Cases, 245 U.S. 366, 389–390, 38 S.Ct. 159, 62 L.Ed. 349 (1918).

ments, that the ruling cannot now be considered conclusive,[34] the re-enactment in substance of the same provision in the subsequent acts strongly suggests that its vitality remains unimpaired.[35] The statute carries with it not only the strong presumption of constitutionality,[36] but also has the additional support of a holding of the Supreme Court of more than fifty years standing.[37]

It is now clear that because the ministerial exemption in section 6(g) of the present Act operates as part of a statutory scheme designed to minimize the disruptive force of the statute upon the national well being, while ensuring adequate manpower to satisfy the nation's military needs,[38] the Act, read as a whole, cannot be said to exhibit either a primary purpose or effect of advancing religion qua religion [39]—in no respect does the exemption violate the governmental duty of neutrality toward religion.

### (b) The student deferment.

The Act authorizes [40] and the regulations provide for [41] the deferment from training and service of college students until completion of their studies for baccalaureate degrees, failure to pursue a full course of instruction or attaining the age of 24, whichever occurs first, whereupon they are subject to induction.

The defendants contend that this student deferment constitutes an arbitrary discrimination forbidden by the due process clause of the Fifth Amendment. The thrust of the attack is that it discriminates against the lower income groups because generally they cannot afford to pay tuition and other necessary college expenses, or that as a result of their economic deprivation most are ill-equipped to meet college academic standards, with the consequence that registrants within the higher income segment have achieved the bulk of the student deferments; in effect, the end result has

34. See discussion and cases collected in United States v. Seeger, 326 F.2d 846, 850–855 (2d Cir. 1964), rev'd on other grounds, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

35. Selective Service Act of 1917, § 4, 40 Stat. 78; Selective Training and Service Act of 1940, § 5(d), 54 Stat. 888; Selective Service Act of 1948, § 6(g), 62 Stat. 611; Military Selective Service Act of 1967, § 6(g), 50 U.S.C.App. § 456(g).

36. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 354–356; 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); cf. United States v. National Dairy Prods. Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Ex parte Endo, 323 U.S. 283, 299, 65 S.Ct. 208, 89 L.Ed. 243 (1944).

37. Cf. United States v. Ullmann, 221 F. 2d 760, 762 (2d Cir. 1955), aff'd, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). See also United States v. Finazzo, 288 F.2d 175, 177 (6th Cir.), cert. denied, 368 U.S. 837, 82 S.Ct. 37, 7 L. Ed.2d 38 (1961); Tedesco v. United States, 255 F.2d 35, 37 (6th Cir. 1958); Blalock v. United States, 247 F.2d 615, 621 (4th Cir. 1957); United States v. Scully, 225 F.2d 113, 119 (2d Cir.)

(Frank, J., concurring), cert. denied, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955).

38. Section 6 of the Act, of which the ministerial exemption forms a part, sets out a detailed, comprehensive arrangement of persons either exempted or deferred from training and service. Thus, §§ 6(a)–(e) excuse various classes· of those currently or formerly in military service; § 6(f), state and federal government officers; §§ 6(h)(1) and (i)(1), high school and college students; § 6(h)(2), those whose employment is in the national health, safety, or interest, or upon whom others depend for their support or who are not fit for service; § 6(j), conscientious objectors; § 6(m), persons convicted of serious crimes; and § 6(o), sole surviving sons of families who have already suffered the loss of a son or daughter in the line of duty.

39. Board of Educ. of Central School District No. 1 v. Allen, 392 U.S. 236, 88.S. Ct. 1923, 20 L.Ed.2d 1060 (1968); School Dist. of Abington Township, Pa. v. Schempp, 374 U.S. 203, 222, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963).

40. Act, § 6(h) (1), 50 U.S.C. § 456(h) (1).

41. 32 C.F.R. § 1622.25–.26.

been that a disproportionate percentage of those inducted in the military service are from the lower income groups. There need be no blinking at the fact that student deferments have resulted in disparities in the induction of non-students as against the deferred student, or that the draft system has its inequities.[42] However, to recognize that a legislative provision has its shortcomings and in practice results in some inequality does not stamp it as unconstitutional absent a showing that it is without any rational basis and therefore arbitrary.[43] There is no claim that the student deferment provision was designed as an arbitrary, purposeful and invidious discrimination against the economically or otherwise disadvantaged registrant.[44] The court must uphold it so long as it "has reasonable relation to legitimate legislative ends and is supported by considerations of policy and practical convenience. * * * "[45] The deferment postpones, but does not exempt the student from service. It was within Congress' competence to decide that it was in the national interest for students to complete their studies without interruption to assure a steady flow of college trained manpower. Defendant

Brown suggests, however, that the Government has not shown that all such deferments are in the national interest, or that they are necessary to generate an adequate supply of officer personnel. However, under our Constitution the determinations of national interest and adequate officer supply and the need for college trained manpower in various governmental activities are vested in Congress and not in the courts.[46]

## III

Branigan and Robinson next attack the delinquency regulations under which they were reclassified and then ordered to report for induction.[47] At the threshold the Government challenges their right to raise the issue upon the ground that they failed to take the administrative appeals available to them within the Selective Service System.[48] Thus, the Government argues that the defendants are precluded from urging the invalidity of the delinquency regulations even by way of defense to a criminal prosecution. The issue is a close one. There are cases, making allowances for factual differences, which look in both directions, not only with regard to the Selective Service Sys-

42. The National Advisory Commission on Selective Service, In Pursuit of Equity: Who Serves When Not All Serve? 21–22 (1967).

43. *Cf.* Steward Machine Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 81 L.Ed. 1279 (1937); Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940 (1934); United States v. Bendik, 220 F.2d 249, 252 (2d Cir. 1955); Lapides v. Clark, 85 U.S.App.D.C. 101, 176 F.2d 619, 620, cert. denied, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949).

44. See Loving v. Commonwealth of Virginia, 388 U.S. 1, 10, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Ferguson v. Skrupa, 372 U.S. 726, 732, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); Morey v. Doud, 354 U.S. 457, 463, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

45. United States v. Bendik, 220 F.2d 249, 252 (2d Cir. 1955).

46. Falbo v. United States, 320 U.S. 549, 552, 64 S.Ct. 346, 88 L.Ed. 305 (1944); United States v. Macintosh, 283 U.S. 605, 621–622, 51 S.Ct. 570, 75 L.Ed. 1302 (1931), overruled on other grounds, Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946); Selective Draft Law Cases, 245 U.S. 366, 377, 38 S.Ct. 159, 62 L.Ed. 349 (1918); United States v. Butler, 389 F. 2d 172 (6th Cir.), cert. denied, 390 U.S. 1039, 88 S.Ct. 1636, 20 L.Ed.2d 300 (1968); Talmanson v. United States, 386 F.2d 811, 812 (1st Cir. 1967), cert. denied, 391 U.S. 907, 88 S.Ct. 1658, 21 L.Ed.2d 421 (1968).

47. 32 C.F.R. § 1642.4(a) authorizes delinquency declaration of any registrant who "has failed to perform any duty or duties required of him under the selective service law other than the duty to comply with an Order to Report for Induction * * * or * * * Civilian Work. * * * "

48. See 32 C.F.R. Part 1626.

tem itself,[49] but also throughout the law of administrative agencies generally.[50]

These defendants make no claim that their local boards lacked a "basis in fact"[51] in declaring them delinquent or in determining their reclassification; they disavow any claim that the boards acted erroneously or improperly in the

49. *Compare* DuVernay v. United States, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969), aff'g by an equally divided Court 394 F.2d 979 (5th Cir. 1968); Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 251, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) (Stewart, J., dissenting); Estep v. United States, 327 U.S. 114, 115–116, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Falbo v. United States, 320 U.S. 549, 554–555, 64 S.Ct. 346, 88 L.Ed. 305 (1944); Breen v. Selective Service Local Bd. No. 16, 406 F.2d 636 (2d Cir. 1969); Yeater v. United States, 397 F.2d 975, 976 (9th Cir. 1968); Mahan v. United States, 396 F.2d 316, 318–319 (10th Cir. 1968); United States v. McKart, 395 F.2d 906, 908–909 (6th Cir.), cert. granted, 393 U.S. 922, 89 S.Ct. 256, 21 L.Ed.2d 258 (1968); Magee v. United States, '392 F.2d 187, 188 (1st Cir. 1968); United States v. Dyer, 390 F.2d 611, 612 (4th Cir. 1968); United States v. Nichols, 241 F.2d 1, 3 (7th Cir. 1957); Watkins v. Rupert, 224 F.2d 47, 48 (2d Cir. 1955); Davis v. United States, 203 F.2d 853, 858 (8th Cir.), cert. denied, 345 U.S. 996, 73 S.Ct. 1138, 97 L.Ed. 1403 (1953), *with* Oestereich v. Selective Service System Local Bd. No. 11, supra, 393 U.S. at 242, 89 S.Ct. 414 (Harlan, J., concurring); Hart v. United States, 391 U.S. 956, 960, 88 S.Ct. 1851, 20 L.Ed.2d 871 (1968) (Douglas, J., dissenting); Gibson v. United States, 329 U.S. 338, 350, 67 S.Ct. 301, 91 L.Ed. 331 (1946); Estep v. United States, supra, 327 U.S. at 123, 66 S.Ct. 423; Vaughn v. United States, 404 F.2d 586, 590–591 (8th Cir. 1968); Lockhart v. United States, 1 S.S. L.R. 3204, 3205 (9th Cir. Oct. 23, 1968); Briggs v. United States, 397 F.2d 370, 372–374 (9th Cir. 1968); Wills v. United States, 384 F.2d 943, 945–946 (9th Cir. 1967), cert. denied, 392 U.S. 908, 88 S.Ct. 2052, 20 L.Ed.2d 1366 (1968); Thompson v. United States, 380 F.2d 86, 88 (10th Cir. 1967) (dictum); Gatchell v. United States, 378 F.2d 287, 291 (9th Cir. 1967); Wolff v. Selective Service Local Bd. No. 16, 372 F.2d 817, 825 (2d Cir. 1967); Daniels v. United States, 372 F.2d 407, 414 (9th Cir. 1967); Donato v. United States, 302 F.2d 468, 470 (9th Cir. 1962); Glover v. United States, 286 F.2d 84, 90 (8th Cir. 1961); Townsend v. Zimmerman, 237 F.2d 376 (6th Cir. 1956); United States v. Vincelli, 215 F.2d 210, 213, modified, 216 F.2d 681 (2d Cir. 1954); Schwartz v. Strauss, 206 F.2d 767 (2d Cir. 1953) (Frank, J., concurring); Knox v. United States, 200 F.2d 398, 401–402 (9th Cir. 1952); Chih Chung Tung v. United States, 142 F.2d 919, 921 (1st Cir. 1944).

50. *Compare* W.E.B. DuBois Clubs of America v. Clark, 389 U.S. 309, 312 & n. 9, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967); Allen v. Grand Central Aircraft Co., 347 U.S. 535, 553, 74 S.Ct. 745, 98 L.Ed. 933 (1954); Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 772–773, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); Yakus v. United States, 321 U.S. 414, 443–446, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938), *with* NLRB v. Industrial Union of Marine & Shipbuilding Workers, 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 163, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); Greene v. United States, 376 U.S. 149, 163, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); City of Chicago v. Atchison, T. & S. F. Ry., 357 U.S. 77, 89, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); Public Utilities Comm'n of California v. United States, 355 U.S. 534, 539–540, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); Lichter v. United States, 334 U.S. 742, 746–747, 754, 791–792, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); Hillsborough v. Cromwell, 326 U.S. 620, 625–626 (1946); Yakus v. United States, supra, 321 U.S. at 446–447, 64 S.Ct. 660 (dictum); Public Utilities Comm'n of Ohio v. United Fuel Gas Co., 317 U.S. 456, 468–469, 63 S.Ct. 369, 87 L.Ed. 396 (1943); Skinner & Eddy Corp. v. United States, 249 U.S. 557, 562–563, 39 S.Ct. 375, 63 L.Ed. 772 (1919). See generally 3 K. Davis on Administrative Law, § 20.04, at 74–81 (1958); L. Jaffe, Judicial Control of Administrative Action 424–58 (1965).

51. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 394, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

determination of any factual questions. Indeed, each defendant concedes he committed the act upon which the board based its declaration of delinquency.[52] What is challenged as void on both statutory and constitutional grounds is the use of the delinquency regulations in the instance of Branigan to reclassify him from II–A to I–A followed by the induction order, and in the case of Robinson, already in I–A, to order his induction. Thus, the regulations having been applied to declare them delinquent, the sole issue the defendants could have presented for administrative appellate review was the statutory and constitutional validity of the regulations insofar as they were applied to accelerate their induction.[53] The substance of the claim is that the declaration of delinquency, which, in the instance of each defendant, followed fast upon his mailing to his board his classification certificate and which hastened his reclassification and induction order, was punitive and deprived him of his right to trial by jury, right to counsel and other constitutional safeguards, as well as his First Amendment rights.[54] While the First Amendment claim may be deemed foreclosed in the light of recent decisions,[55] the challenge to the alleged punitive use of the regulations has been recognized as one of substance; Mr. Justice Harlan referred to it as a "nonfrivolous argument," [56] and the Solicitor General himself has acknowledged that the validity of the delinquency regulations turns upon their application.[57]

It is questionable, to say the least, that administrative appeals boards have the authority to consider and determine the statutory and constitutional claims which, as here presented, do not require any fact determination within the board's competence.[58] Moreover, the

52. Branigan, then classified II–A on November 8, 1967, returned his classification and registration certificates to his local board with a letter stating he could not serve in the Vietnam war or cooperate with the Selective Service System. On November 21, 1967, the local board declared him delinquent and voted to reclassify him I–A. On November 27 the board sent Branigan a notice of delinquency together with his I–A reclassification and notified him that he had a right to ask for a personal appearance or to appeal from his I–A classification. It is conceded he took no appeal. He was ordered to report for induction on February 20, 1968, at which time he reported but refused to submit, following which he was indicted for such refusal, for nonpossession of his notice of classification, and for nonpossession of his registration certificate.

Robinson, on December 8, 1967, then classified I–A, mailed his classification card to his board endorsed "unacceptable" and "peace to you." On January 8, 1968, his board declared him delinquent because of his failure to have his classification card in his possession. On January 10 the notice of delinquency was mailed to him. On January 12 he was ordered to report for induction, which was later rescheduled for February 15, 1968, at which time he reported but refused to submit to induction. Thereafter he was indicted for such refusal

and for failure to possess his classification notice.

53. In both instances the I–A classification, based on the delinquency declaration, advanced defendants to the head of the order of call. See 32 C.F.R. § 1631.7.

54. See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed. 2d 644 (1963) ; cf. United States v. Brown, 381 U.S. 437, 458, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965).

55. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Cf. Zigmond v. Selective Service Local Bd. No. 16, 284 F.Supp. 732, 735 (D. Mass.), aff'd, 396 F.2d 290 (1st Cir. 1968).

56. Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 244 n. 6, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

57. Brief for Respondents at 44–45, Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

58. Cf. United States v. Kissinger, 250 F. 2d 940, 941–942 (3d Cir.), cert. denied, 356 U.S. 958, 78 S.Ct. 995, 2 L.Ed.2d 1066 (1958) ; Engineers Pub. Serv. Co. v. SEC, 78 U.S.App.D.C. 199, 138 F.2d 936, 952–953 (1943), vacated as moot, 332 U.S. 788, 68 S.Ct. 96, 92 L.Ed. 953 (1947).

Selective Service regulations themselves do not provide for such authority—indeed, they limit the scope of review on administrative appeal.[59] In such circumstances, to require the defendants to challenge the regulations as void before the Appeal Board requires them to challenge a foregone conclusion. The law does not require, particularly where liberty is at stake, that one go through a formal but meaningless procedure.[60] Accordingly, on the facts here presented, the defendants' failure to exhaust administrative remedies does not, for the purposes of these motions, bar their attack upon the statutory and constitutional validity of delinquency regulations. However, this does not resolve the basic issue.

As for the statutory claim, it is true there is no express congressional authorization for the delinquency regulations, but Congress did authorize the promulgation of "the necessary rules and regulations" to carry out the provisions of the Act.[61] And in 1967 Congress, in amending the Act, recognized the existence of the delinquency regulations.[62] The defendants claim that both upon their face and as applied, the regulations are unconstitutional. But it does not appear that the regulations, qua regulations, are constitutionally impermissible. Thus, if the regulations are used as an administrative means to assure compliance by a registrant with the duties he owes to his local board under the Act and authorized regulations, they are beyond challenge—indeed, the defendants concede that if used, as they term it, "as a mere 'civil' enforcement of rules governing classification," they do not trespass upon constitutional limitations.[63]

DuVernay v. United States, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969), aff'g by an equally divided Court 394 F.2d 979 (5th Cir. 1968), may be distinguished as a case where petitioner failed in the criminal prosecution to raise as a defense the local board's refusal to reopen his classification based upon claims of student deferment, then a hardship deferment and finally an occupational deferment, cf. Miller v. United States, 388 F.2d 973, 976 (9th Cir. 1967); United States v. Freeman, 388 F.2d 246, 249 & n. 3 (7th Cir. 1967); Stain v. United States, 235 F.2d 339, 342 (9th Cir. 1956); United States v. Burlich, 257 F.Supp. 906, 910–911 (S.D. N.Y.1966), thereby cutting off the possibility that a favorable disposition of any one of the classification claims would have left no remnant of his other constitutional claims. Cf. Public Utilities Commission of California v. United States, 355 U.S. 534, 539–540, 78 S.Ct. 446, 2 L. Ed. 470 (1958); Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 772–773, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947).

59. 32 C.F.R. § 1626.24(b): "In reviewing the appeal and classifying the registrant, the appeal board shall not receive or consider any information other than the following:
(1) Information contained in the record received from the local board.
(2) General information concerning economic, industrial, and social conditions."

60. Cf. Wolff v. Selective Service Local Bd. No. 16, 372 F.2d 817, 825 (2d Cir. 1967).

61. Act, § 10(b) (1), 50 U.S.C.App. § 460 (b) (1).

62. Act, § 6(h) (1), 50 U.S.C.App. § 456 (h) (1). Cf. Comm'r v. Noel's Estate, 380 U.S. 678, 682, 85 S.Ct. 1238, 14 L. Ed.2d 159 (1965); Cammarano v. United States, 358 U.S. 498, 510, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959); United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893 (1933); National Lead Co. v. United States, 252 U.S. 140, 146, 40 S.Ct. 237, 64 L.Ed. 496 (1920).

63. Interestingly, in Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), petitioner and the Government acknowledged that if the delinquency regulations were used as an administrative means to afford a delinquent an opportunity to bring himself in compliance with his duties under the Act, any claim of constitutional infirmity would be dissolved. Brief for Petitioner at 52–53; Brief for Respondents at 45–46. Each observed that until the moment of induction a reclassified delinquent has the opportunity to effect a change of delinquency status if he corrects the default and that the board has the power (unlike other situations) to restore a delinquent registrant to his prior classification. See 32 C.F.R. §§ 1642.4 (c), 1642.14.

On the other hand, if applied to reclassify and to induct registrants as a punishment for alleged violations of law which also constitute an infraction of regulations, then questions of substantial constitutional import are raised.

■ After a careful study of the comprehensive briefs and voluminous affidavits submitted in support of and in opposition to the motions, the court is persuaded that a determination of the legality of the delinquency regulations as applied in declaring the defendants delinquent followed by the orders of induction cannot be decided on a motion to dismiss the indictment. This must await a full presentation upon a trial of the factual context in which the boards made their determination, how the delinquency regulations were applied and how the Selective Service System operates with respect to them.[64]

Accordingly, the respective motions to dismiss the indictment are disposed of as indicated.

## IV

■ (a) The motion for a bill of particulars is granted in each case to the following extent:

The Government shall set forth:

(1) the general nature, time and place of defendant's failure, neglect and refusal to submit to induction;

(2) each rule, regulation and direction referred to in the indictment;

(3) the date it will be claimed defendant's Order to Report for Induction was mailed to him;

(4) a list of the members of the local board of defendant, or panel thereof, if any, from the date of defendant's initial I–A classification to the date of his failure to submit to induction; in the cases of defendants Moyer and Robinson, a further list of the members of their respective appeal boards or panels thereof, if any, at the times when defendants' classifications or status were there considered. Each such list shall include the names, ages, citizenship, length of service and military affiliation (if any), either in the armed forces or in a reserve component thereof, of each such member;

(5) at the start of trial, the home address of each such member shall be delivered to the trial judge for inspection in camera for such disposition as the judge shall then determine;

(6) the geographical boundaries of each said board.

The remaining requests for particulars are denied.

(b) The motion for discovery and inspection is granted to the following extent:

In each case the Government shall make available for inspection and copying the following:

(1) any statement of the defendant that the Government may have in its possession, custody or control, including his grand jury testimony, if any;

(2) the defendant's Selective Service file;

(3) a list of registrants at defendant's Local Board who were subject to selection and an order to report for induction pursuant to 32 C.F.R. § 1631.7 following the board's receipt of the Notice of Call (SSS Form 201) under which defendant was notified to report for induction. The list of registrants shall be in the order in which the registrants were so subject, as provided for in the aforesaid Regulation, down to and including the defendant;

(4) the Delivery List (SSS Form 261) prepared by the local board pursuant to 32 C.F.R. § 1632.5 in response to the Notice of Call of registrants at defendant's local board which includes the defendant's name. If the aforesaid Delivery List does not specify the order in which registrants were selected in response to the Notice of Call, then such records which do reflect the order in which the

64. But see Dictograph Prods. Co. v. Sonotone Corp., 230 F.2d 131, 134 (2d Cir.), cert. dismissed, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956).

registrants were selected shall be included;

(5) the minutes of said boards and, in the cases of defendants Moyer and Robinson, the Appeals Board Docket Book entries (SSS Form 121), insofar as they relate to defendant, unless already a part of defendant's file;

(6) the Government shall state whether a quorum was present at each meeting of said boards relating to defendant's classification or status.

The remaining requests are denied.